## UNITED STATES *v.* MORROW.

APPEAL FROM THE COURT OF CLAIMS.

No. 98. Argued October 21, 1924.—Decided January 5, 1925.

1. Although a proviso is sometimes used to introduce independent legislation, the presumption is that, in accordance with its primary purpose, it applies only to the provision to which it is attached. P. 534.

2. A proviso may be examined in the light of prior legislation, the condition it was evidently intended to correct, and its legislative history. P. 535.

3. The provisos found in the Army Appropriation Acts of 1915, and 1916, which granted additional pay to clerks and messengers at headquarters of territorial departments, etc., while serving in the Philippine Islands, are confined to those positions for which specific salaries were appropriated by the preceding clauses to which the provisos are attached, and are inapplicable to a chief clerk of the depot quartermaster's office at Manila whose salary was fixed by the War Department and paid out of lump sums appropriated elsewhere in these statutes. P. 534.

58 Ct. Clms. 20, reversed.

APPEAL from a judgment of the Court of Claims rejecting a claim for additional pay.

*Mr. Merrill E. Otis*, Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. John G. Ewing* were on the brief, for the United States.

*Mr. George A. King*, with whom *Mr. William B. King* and *Mr. George R. Shields* were on the brief, for appellee.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This case involves the construction of a proviso in the Army Appropriation Acts of 1915 and 1916, relating to an increase in the pay of clerks and messengers at headquarters of territorial departments. 38 Stat. 351, 355, c. 72; 38 Stat. 1062, 1067, c. 143.

This proviso follows a special appropriation made—in substantially identical language—in the two acts. In the Act of 1915 this provision reads:

" Pay to Clerks, Messengers, and Laborers at Headquarters of the Several Territorial Departments, Territorial Districts, Tactical Divisions and Brigades, Service Schools and Office of the Chief of Staff.

" One chief clerk at the office of the Chief of Staff, $2,000 per annum. Fifteen clerks, at $1,800 each per annum. Fifteen clerks, at $1,600 each per annum. Thirty-eight

clerks, at $1,400 each per annum. Seventy clerks, at $1,200 each per annum. Sixty-five clerks, at $1,000 each per annum. . . . Two messengers, at $840 each per annum. Fifty-nine messengers at $720 each per annum. . . . One laborer, at $660 per annum. Two laborers, at $600 each per annum. One laborer, at $480 per annum. . . . In all, $312,320.
Additional pay while on foreign service, $9,000.

" *Provided,* That on and after July first, nineteen hundred and fourteen, the pay of clerks and messengers at headquarters of territorial departments, tactical divisions, brigades, and service schools, who are citizens of the United States, shall be increased $200 each per annum while serving in the Philippine Islands, such service to be computed from the date of departure from the continental limits of the United States to the date of return . . .

" And said clerks, messengers, and laborers shall be employed and assigned by the Secretary of War to the offices and positions in which they are to serve. . . ."

By a separate provision in the act a lump sum appropriation of $1,833,127 was made for incidental expenses of the quartermaster corps, including the " hire of laborers " and " compensation of clerks and other employees to the officers " (p. 363).[1]

Morrow, a citizen of the United States, went to the Philippine Islands in 1899. From May 15, 1914, to January 17, 1917, he served as chief clerk of the depot quartermaster's office, at the headquarters of the Philippine Department of the Army, in Manila. He received a salary of $2,000 a year, which was fixed by the War Department and paid out of the lump sum appropriations for the quartermaster corps. Later he submitted to the Auditor a claim for additional pay at the rate of $200 a year for the period of his service after July 1, 1914, under

---

[1] A like provision was contained in the Act of 1916 (p. 1074).

the proviso in the acts increasing the pay of clerks and messengers at headquarters of territorial departments while serving in the Philippine Islands. This was allowed and paid; but was thereafter charged against him as having been erroneously paid, and deducted from the pay then accruing to him as a captain in the quartermaster's corps. Thereupon he brought this action to recover the amount claimed, and was awarded judgment. 58 Ct. Clms. 20.

It is conceded that Morrow was a clerk in the quartermaster corps, and not one of the headquarters[2] clerks included within the first paragraph of the appropriation.

The contention of the United States[3] is that the proviso applied only to the headquarters clerks and messengers employed at the statutory salaries fixed by the appropriation, and did not include clerks in the quartermaster corps employed at salaries fixed by the War Department; that is, that it merely increased the statutory salaries of the clerks and messengers provided for by the specific appropriation when they should serve in the Philippine Islands.

This we think is its plain meaning. The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation. *Minis* v. *United States,* 15 Pet. 423, 445; *Georgia Banking Co.* v. *Smith,* 128 U. S. 174, 181; *White* v. *United States,* 191 U. S. 545, 551; *Cox* v. *Hart,* 260 U. S. 427, 435. Its grammatical and logical

---

[2] The term " headquarters " is used in this opinion as including the various army stations mentioned in the special appropriations.

[3] In the Court of Claims the United States contended that Mosrow did not come within the proviso because he was residing in the Philippine Islands when appointed to the clerkship. This was apparently the sole contention then made; but, although repeated in the brief here, it was expressly abandoned by the United States in the argument at bar.

scope is confined to the subject-matter of the principal clause. *United States* v. *Whitridge,* 197 U. S. 135, 143. And although sometimes used to introduce independent legislation, the presumption is that, in accordance with its primary purpose, it refers only to the provision to which it is attached. *United States* v. *Falk,* 204 U. S. 143, 149. Here it clearly appears that the proviso was employed in its primary sense. The entire context shows that it was intended to apply only to the headquarters clerks and messengers employed at the statutory salaries fixed by the special appropriation, and related to the $9,000 provided for the additional pay of such employees while on foreign service; and it plainly had no reference to clerks and messengers in the quartermaster corps whose salaries were fixed by the War Department under the lump sum appropriation.

This is emphasized when the proviso is examined in the light of prior legislation, the condition it was evidently intended to correct, and its legislative history. *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1, 12; *Work* v. *Lynn, ante,* 161. In all of the Army Appropriation Acts from 1895 to 1914 special appropriations were made for a designated number of clerks and messengers at headquarters and army stations, at specified rates of pay; but no provision for any increase in their pay while on foreign service. Lump sum appropriations were also made for staff corps and departments, including the quartermaster corps, under which clerks and messengers were employed at rates of pay fixed by the War Department. In 1904 the War Department issued an order under which clerks in the staff corps and departments paid under the lump sum appropriations were granted an increase of $200 in their annual compensation when transferred to the Philippines. This, however, could not be applied to the headquarters clerks whose salaries were fixed by the specific appropriations. In 1912 the Secretary of War wrote to

the Speaker of the House of Representatives, stating that
the pay of the headquarters clerks who were serving in
the Philippines was not commensurate with their work
and less than that of any other similar government em-
ployees in the Islands, and that as there were " no means "
by which the War Department could remedy this condi-
tion, he recommended that Congress insert in the next
appropriation for headquarters employees a proviso that
the pay of such clerks and messengers be increased 20
per centum while serving in the Philippines. This recom-
mendation was renewed by the succeeding Secretary of
War, prior to the consideration of the Army Appropria-
tion Bill for 1915.[4]  Thereafter Congress added to the
appropriation the $9,000 for additional pay while on for-
eign service, and the proviso relating to the increase of
pay while serving in the Philippines, in the form in which
they have been quoted; these additions being adopted
after the proposed increase had been changed, on a report
of the Conference Committee, from 20 per centum, the
amount recommended by the Secretaries, to $200 a year,
the increase given by the War Department to clerks in
the staff corps and departments.[5]

In the light of this history there is no room to doubt—
even if it were not plain from the face of the act itself—
that the proviso was intended to apply merely to the head-
quarters clerks and messengers included within the specific
appropriation. It manifestly was not intended that
clerks in the staff corps and departments should receive,
in addition to the $200 increase given them by the War
Department, a second increase of like amount under the
terms of the proviso.

It is entirely clear that Morrow's service in the quarter-
master's office in the Philippines was not within the scope

[4] 63rd Cong., 1st Sess., House Doc. No. 46.

[5] 51st Cong. Rec., pt. 6, p. 5592; 63d Cong., 2nd Sess., Sen. Doc.
No. 469.

of the proviso. It is unnecessary to review in detail the various contentions urged in his behalf. We do not find them sufficient to sustain the judgment; and it must be and is

*Reversed.*