**BAXTER v. McGEE et al.** *

No. 10383.

Circuit Court of Appeals, Eighth Circuit.

March 3, 1936.

Rehearing Denied March 30, 1936.

*Writ of certiorari denied 56 S. Ct. 948, 80 L. Ed. —.

🚚 Courts ⚖️356(13)

Lamar Williamson, of Monticello, Ark. (John Baxter, of Dermott, Ark., and Williamson & Williamson, of Monticello, Ark., on the brief), for appellant.

J. B. Daggett, of Marianna, Ark. (Walter Sillers, of Rosedale, Miss., and J. G. Burke, of Helena, Ark., on the brief), for appellees.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant brought suit to quiet his title to Montgomery Towhead Island, an island situated in the Mississippi river in Desha county, Ark., and containing 650.41 acres. The appeal is from a decree dismissing appellant's bill of complaint, sustaining a motion to dismiss a petition of intervention and cross-complaint by Grady Miller, receiver of the Southeast Arkansas levee district, and confirming and quieting title in appellee Mrs. George McGee, hereinafter called appellee.

The appellant claims title under an Island deed executed and delivered to him on November 4, 1932, by "The State of Arkansas, by Belva Martin as Commissioner of State Lands." The deed acknowledges payment of a consideration of $813.-01 and recites: "Whereas, a survey has been executed and the plat and field notes thereof filed and approved in complete compliance with all of the provisions of said Act, from which it appears that said area 'locus in quo,' is in fact an Island formed subsequent to the admission of the State of Arkansas into the Union, formed in the Mississippi River, a navigable stream, in the County of Desha, in the State of Arkansas, and is subject to sale under the provisions of said Act, the undersigned Commissioner expressly finding upon investigation and from evidence that said area is above the mean highwater mark of the river in which it is located, and is accessible to agriculture, and that each and all of the provisions of said Act have been fully complied with."

Authority for the purchase and sale of the island is claimed under Act No. 282 of the Arkansas General Assembly, approved March 21, 1917, the title and sections 1, 4 and 7 of which (Acts 1917, pp. 1468-1470) are as follows:

"An Act to provide for the sale and disposition of islands formed or which may form in navigable rivers or streams of the State which belong to the State of Arkansas, and for other purposes.

"Section 1. That all islands formed or which may form in the navigable rivers or streams of this State, subsequent to the admission of the State of Arkansas into the Union, are hereby declared to be the property of the State and subject to sale and disposition in the manner and form hereinafter provided. * * *

"Section 4. Upon receipt of the field notes and plats as provided in Section 3 hereof and upon their being filed and approved by said Commissioner, said Commissioner shall notify the applicant that said survey has been completed and thereupon issue such muniment of title as is now provided by law for the sale of State lands. * * *

"Section 7. No lands shall be sold or disposed of by the State under the provisions of this Act which are not accessible to agriculture nor which are below mean high water mark of the stream or river in which they are located. Provided that this Act shall not apply to accretion lands that heretofore or may hereafter be formed."

The appellee Mrs. George McGee claims title under a quitclaim deed dated August 25, 1934, from Grady Miller, receiver of the Southeast Arkansas levee district, executed pursuant to an order of court. Said levee district is the successor in interest of the Red Fork levee district of Desha county, Ark., which district, the appellee contends, acquired title by virtue of Act No. 43 of the Arkansas General Assembly, approved March 7, 1899. The title, Preamble and section 1 of said act (Acts 1899, pp. 68, 69) are set out in the margin.*

---

*Act No. 43, Approved March 7, 1899.

"An Act to donate to the several levee districts named certain lands therein and in Desha County situated, for levee purposes.

"Whereas, The General Assembly of the State of Arkansas, by an act entitled 'An act to donate to the Laconia

Levee Board, Red Fork Levee Board, Desha Levee Board, Chicot Levee Board and the Linwood and Auburn Levee Boards, all the lands of the State within the limits of said levee district,' approved April 14, 1893;

"Whereas, By said act it was provided that all interests of the State nor, (now)

The title and section 1 of Act No. 176, approved April 14, 1893 (Acts 1893, p. 308), are also set out in the margin.**

Grady Miller, the receiver, intervened claiming that the deed from him to Mrs. McGee was given without consideration, that he had no right and the court no authority to direct him to give a deed without consideration to anyone, and that said deed was, therefore, void and should be cancelled. And he asked that title be quieted in him as against both the appellant and appellee.

The first error assigned complains of the ruling of the court dismissing the petition of intervention.

The ruling of the court was right. It leaves the intervener free to institute such action as he may be advised for the assertion of his alleged rights. Intervention is a matter of discretion at most, and, under Equity Rule 37 (28 U.S.C.A. following section 723), should not be permitted unless it is in "subordination to, and in recognition of, the propriety of the main proceeding." It may be that the intervener could have come in as a defendant in response to the published notice but he chose to intervene and claim title as against both plaintiff and defendant. This he cannot do under the rule. Whittaker v. Brictson Mfg. Co., 43 F.(2d) 485, 489 (C.C.A.8).

The trial court correctly found as a matter of law that the appellant must recover, if at all, upon the strength of his own title. Counsel stipulated of record that appellant purchased the island and that the commissioner of state lands delivered to him the deed dated November 4, 1932, referred to above. The appellee, however, contends that the deed is not prima facie evidence of title, and that the burden was upon appellant to prove the truth of the recitations therein. This contention is

---

or may have within the next three years, by reason of forfeiture for non-payment of taxes;

"Whereas, The Land Commissioner's construction of said act is that the State does not acquire such interest as referred to in said act until the lands have been deeded to the State, after the two years' right of redemption has passed;

"Whereas, Such construction deprived the several levee boards of the lands forfeited in the years 1894, 1895 and 1896, for the reason the deed for 1894, would not be made until June, 1896, more than three years after the act was approved; now, therefore, be it enacted by the General Assembly of the State of Arkansas:

"Section 1. For the purpose expressed in said act, approved April 14, 1893, all the lands or interests therein now belonging to the State, or which the State may acquire an interest in, by reason of forfeiture for the non-payment of taxes in the next three years, and which may be conveyed to the State after two years' right of redemption expires, whether such conveyance be made before or after the three years, be and are hereby donated to the several levee districts as follows:

"All such lands as are situated in the Laconia District to said district.

"All such lands as are situated in the Desha Levee District to said district.

"All such lands situated in Desha County, not embraced in the Desha and Laconia Districts, are hereby donated to the Red Fork Levee District.

"All such lands as are situated in the Linwood and Auburn District, in Lincoln and Jefferson Counties, are hereby donated to said district, that is, the lands in Lincoln County to the Lincoln County Board, and those situated in Jefferson County to the Jefferson County Board.

"These lands are donated to the several levee districts under the restrictions and upon the terms, and for the purposes provided in said act, approved April 14, 1893. * * * This donation does not include the sixteenth section school lands in any of said districts."

** Act No. 176, Approved April 14, 1893.

"An Act to donate to the Laconia Levee Board, the Red Fork Levee Board, the Desha Levee Board, the Chicot Levee Board and the Linwood and Auburn Levee Boards all the lands in this State within the limits of said levee districts.

"Section 1. That for the purpose of assisting the citizens of the State to build and maintain levees in the Laconia levee district, the Red Fork levee district, the Desha levee district, the Chicot levee district and the Linwood and Auburn levee district, all of the lands of this State lying within the said levee districts which are subject to taxation under the law for levee purposes and which belong to the State, except the 16th section school lands, *and all the right or interest that the State has or may have within the next three years by reason of forfeiture for non-payment of taxes, to any lands within said levee districts* except 16th section school lands, is hereby conveyed to said levee districts under the restrictions and upon the terms hereinafter provided." (Italics supplied.)

without merit. Section 4 of Act No. 282 of the Legislature of Arkansas (Acts 1917, p. 1469), which authorizes the conveyance, provides that the commissioner of state lands shall "issue such muniment of title as is now provided by law for the sale of State lands." Although it is not claimed that any irregularity exists in the form of deed given by the commissioner, if there were any such irregularity it is cured by Act No. 25 of the General Assembly of the State of Arkansas approved February 9, 1933 (Acts 1933, p. 59, § 3), wherein it is provided that: "All sales heretofore made by the Commissioner of State Lands under the provision of said Act 282 of the General Assembly of the State of Arkansas for the year 1917, approved March 21, 1917, are hereby confirmed and the title of all purchases under such deeds from the Commissioner of State Lands are hereby quieted, established and confirmed."

The deed being in due form, its status as evidence is covered by section 6594, Crawford & Moses' Digest of the statutes of Arkansas, which is as follows: "Deeds as evidence. The seal of the Commissioner of State Lands, Highways, and Improvements shall be sufficient verification and authentication of the deed or deeds made by him for any class of lands mentioned in this chapter, *and such deed or deeds shall be received as evidence of the legal title to such lands in any court* in this State." (Italics supplied.)

Our conclusion upon this point is consistent with the decisions of the Supreme Court of Arkansas. See Scott v. Mills, 49 Ark. 266, 4 S.W. 908, 912; Boynton v. Ashabranner, 75 Ark. 415, 88 S.W. 566, 567, 1011, 91 S.W. 20.

The important and determining question involved on this appeal is the claim of the appellee that at the time the deed to appellant was made in 1932 the state of Arkansas had no title to the island to convey. The appellee contends, and the district court found as a fact: "That the State of Arkansas by Act No. 78 of the General Assembly of the State of Arkansas approved April 4, 1901 (Acts 1901, p. 131), Act No. 176 * * * approved April 14, 1893 (Acts 1893, p. 308), and by Act No. 43 .* * * approved March 7, 1899 (Acts 1899, p. 68) donated and conveyed all of the title to all of the lands owned by the State of Arkansas * * * situated in Desha County and not embraced within the boundaries of the * * * Laconia and Desha Levee Districts, to the Red Fork Levee District; * * * Therefore * * * the State of Arkansas had no title thereto when the Commissioner of State Lands executed said deed to the plaintiff, R. W. Baxter." This finding of the court is assigned as error.

The solution of the problem thus presented requires an examination and interpretation of Acts Nos. 176 and 43. Act No. 78 is no aid in determining the inquiry. That act merely provided a proceeding for confirming title to lands donated by the state to the Laconia, Desha, and Red Fork levee districts, and it is conceded that no steps were ever taken by any of said districts to quiet title to Towhead Island under the provisions thereof. We must confine our examination, therefore, to Acts Nos. 176 and 43.

The words of the statute relied upon by appellee as donating and conveying Towhead Island to the Red Fork levee district in 1899 are found in section 1 of Act No. 43 (Acts 1899, p. 69), and are as follows:

"For the purpose expressed in said act [176], approved April 14, 1893, all the lands or interests therein now belonging to the State, or which the State may acquire an interest in, by reason of forfeiture for the non-payment of taxes in the next three years, and which may be conveyed to the State after two years' right of redemption expires, whether such conveyance be made before or after the three years, be and are hereby donated to the several levee districts as follows: * * *

"All such lands situated in Desha County, not embraced in the Desha and Laconia Districts, are hereby donated to the Red Fork Levee District."

Whether the island was donated by this statute to the Red Fork levee district depends upon the meaning of the words, "All such lands," used in the last-quoted clause. It is conceded by both parties that the words "such lands" in the phrase refers to the lands described in the first part of section 1 quoted above. The dispute arises over the scope and meaning of the words, "all the lands or interests therein now belonging to the State," as used therein.

The appellant contends that these words are limited to lands in Desha county lying within one of the levee districts named in Act No. 176 (Acts 1893, p. 308), and "now belonging to the State * * * by reason of forfeiture for the non-payment of taxes * * *"; and that they do not

include any state-owned lands situated outside the boundaries of such levee districts, such as Towhead Island, which is outside.

The appellee's position is that the words are plain and unambiguous; that they are not limited to the lands within the levee districts; and that by including them in Act No. 43 the State Legislature intended to and did donate a class of lands to the Red Fork district not referred to in Act No. 176, that is, state-owned lands outside the levee districts.

The law controlling and guiding the court in determining a disputed interpretation of an apparently ambiguous statute is well settled. The primary object in the construction of a statute is to ascertain, if possible, and to give effect to, the intention of the legislative body that enacted the law. That intention must be deduced not from a part but from the entire law. The purpose which the enacting body sought to accomplish and the remedy which it endeavored to apply must always be considered for the purpose of ascertaining its intention. The statute must be given a rational, sensible interpretation; and, if consonant with its terms, it must have an interpretation that will advance the purpose and effect the remedy intended. Wolsey v. Chapman, 101 U.S. 755, 769, 25 L.Ed. 915; Interstate Commerce Commission v. Baird, 194 U. S. 25, 38, 24 S.Ct. 563, 48 L.Ed. 860; James v. Milwaukee, 16 Wall. (83 U.S.) 159, 161, 21 L.Ed. 267; Business Men's Assur. Co. v. Campbell, 18 F.(2d) 223, 225 (C.C.A.8); Soliss v. General Electric Co., 213 F. 204, 207 (C.C.A.8); Stevens v. Nave-McCord Mercantile Co., 150 F. 71, 75 (C.C.A.8); Ebert v. Poston, 266 U.S. 548, 554, 45 S.Ct. 188, 69 L.Ed. 435; State v. Trulock, 109 Ark. 556, 160 S.W. 516, 517.

Considerable weight, in arriving at the meaning of any doubtful statute, must be given to the practical construction placed upon it by the executive officers of the state and by all those whose rights are affected by its provisions, especially when such construction has been unchallenged over a long period of years. State v. Frear, 138 Wis. 536, 120 N.W. 216, 223, 16 Ann.Cas. 1019. In the cited case, it is said: "It requires a very clear case to justify changing the construction of a law, conceded to be somewhat involved, which has been uninterruptedly acquiesced in, for so long a period as 50 years."

In this instance the state treated Towhead Island as property of the state subsequent to the enactment of Act No. 43 for nearly thirty-five years before any one ever questioned its title. No tax was assessed against it; the state sold and conveyed it, accepted payment therefor; and passed Act No. 25 confirming title thereto in appellant. The levee districts named in Act No. 43 at no time during all that period made any claim to it. Not until after this suit was begun did any one ever conceive the idea that the state parted with the title by Act No. 43. These facts are persuasive that title was not conveyed by said act, but of course are not in themselves controlling.

In considering the contentions of the parties, it is to be noted, also, that Act No. 43, the later act, is amendatory of Act No. 176, the earlier act. The later act refers in the preamble to the earlier one by quoting the title of said act, with the date of its approval, and proceeds to set out the reasons for the amendment. To determine the meaning of the second act, therefore, it must be read in connection with the first. Texas v. Eastern Texas R. Co., 258 U.S. 204, 217, 42 S.Ct. 281, 66 L.Ed. 566.

Mr. Justice Gray, speaking for the Supreme Court, said in United States v. Wong Kim Ark, 169 U.S. 649, 653, 18 S.Ct. 456, 458, 42 L.Ed. 890: "In construing any act of legislation, whether a statute enacted by the legislature, or a constitution established by the people as the supreme law of the land, regard is to be had, not only to all parts of the act itself, and of any former act of the same lawmaking power, of which the act in question is an amendment, but also to the condition and to the history of the law as previously existing, and in the light of which the new act must be read and interpreted."

Applying these rules and reading the two statutes together, we reach the conclusion that by the act of 1899 the Legislature intended to convey to the Red Fork levee district only land within the levee districts and which had been forfeited for taxes "in the next three years" following the enactment of the law of 1893; that is, in 1894, 1895, and 1896. The later act is awkwardly drawn, but when its object is kept in mind its meaning is clear.

The reasons stated by the Legislature in Act No. 43 for amending Act No. 176 are that: "The Land Commissioner's construction of said act [176] is that the State does not acquire such interest as referred to in said act until the lands have been

deeded to the State, after the two years right of redemption had passed." Acts 1899, p. 69.

The result, which Act No. 43 sought to cure, was that "such construction deprived the several levee boards of the lands forfeited in the years 1894, 1895 and 1896, for the reason the deed [to the State] for [Lands forfeited in] 1894, would not be made until June, 1896, more than three years after the act was approved." Acts 1899, p. 69.

The purpose expressed in the act of 1893 (Acts 1893, p. 308, § 1) was to assist "the citizens of the State to build and maintain levees" in the six levee districts named by donating and conveying to such levee districts "all the right or interest that the State has or may have within the next three years by reason of forfeiture for nonpayment of taxes, to any lands within said levee districts."

In Act No. 43 the Legislature was emphatic in expressing its intent to limit the amendment to carrying out the original purpose of Act No. 176. The first sentence of section 1 provides that: "For the purpose expressed in said act, approved April 14, 1893, all the lands * * * are hereby donated," etc. And the section concludes with the injunction that: "These lands are donated to the several levee districts under the restrictions and upon the terms, and for the purposes provided in said act, approved April 14, 1893." Acts 1899, p. 69, § 1.

The intent of the Legislature, as clearly expressed in the act, was not to make a new grant or gift of lands in the act of 1899, but by reversing, as it were, the ruling of the land commissioner, to effectuate the gift attempted to be made in the act of 1893. That gift, in so far as we are concerned here, was restricted to lands lying within one of the levee districts and forfeited for the nonpayment of taxes in the years 1894, 1895, and 1896. These were the only lands of which the levee districts were "deprived" by the construction placed upon the act of 1893 by the land commissioner.

Appellee insists that the first paragraph of section 1 of the Act of 1899 provides for a gift of two classes of lands, and that this is made clear by eliminating the comma after the clause, "or which the State may acquire an interest in." Appellee urges that otherwise the section is meaningless, because the state cannot own land *now* the

title to which is dependent on a forfeiture for taxes within the next three years. The fallacy of this contention is obvious. It consists in a misconception of the time referred to by the words "in the next three years." If these words referred to the years following the enactment of the amendment, the statute would indeed be meaningless; but, as limited by the Legislature, they refer to the years 1894, 1895, and 1896, the years following the enactment of the law of 1893.

In 1899 all the lands forfeited for taxes in those years would *now* belong to the state because the two-year period of redemption would have expired. The Legislature, to emphasize its intention to so limit the gift, added to the descriptive words, "all the lands or interests therein now belonging to the State," the co-ordinate explanatory clause introduced by the connective "or" and paraphrased from the description in section 1 of the Act of 1893, then adding: "whether such conveyance be made before or after the three years."

In view of the identity of purpose of the two acts, of the reasons assigned by the Legislature for the amendatory act, of the fact that the second or remedial act was expressly subject to the same restrictions as the first, and in view of the further fact that the statute may reasonably and sensibly be construed to attain these results, it is not logical to hold that the Legislature intended to include lands outside the levee districts. The opposite conclusion, contended for by appellee, leads to confusion of thought and would involve a holding that the Legislature meant to limit the lands donated "belonging to the State" within a levee district to lands acquired "by reason of forfeiture for non-payment of taxes" and not to place such limitation upon state owned lands which appellee contends were also meant to be conveyed, but which lie outside such districts. Such a conclusion is not supported by any sensible construction of the statute. In United States v. Katz, 271 U.S. 354, 357, 46 S.Ct. 513, 514, 70 L.Ed. 986, Mr. Justice Stone stated the rule applicable to such a situation as follows: "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose. See Hawaii v. Mankichi, 190 U.S. 197, 212, 23 S.Ct. 787, 47 L.Ed. 1016, and

cases there cited. In ascertaining that purpose, we may examine the title of the act (United States v. Fisher, 2 Cranch, 358, 386, 2 L.Ed. 304; United States v. Palmer, 3 Wheat. 610, 631, 4 L.Ed. 471; Holy Trinity Church v. United States, 143 U.S. 457, 462; 12 S.Ct. 511, 36 L.Ed. 226), the source in previous legislation of the particular provision in question (United States v. Saunders, 22 Wall. 492, 22. L.Ed. 736; Viterbo v. Friedlander, 120 U.S. 707, 7 S. Ct. 962, 30 L.Ed. 776; United States v. Morrow, 266 U.S. 531, 535, 45 S.Ct. 173, 69 L.Ed. 425), and the legislative scheme or plan by which the general purpose of the act is to be carried out. See Platt v. Union Pacific R. Co., 99 U.S. 48, 63, 64, 25 L.Ed. 424; Bernier v. Bernier, 147 U.S. 242, 246, 13 S.Ct. 244, 37 L.Ed. 152."

█ Since, therefore, Montgomery Towhead Island is not and was not included within the boundaries of any one of the levee districts enumerated in the act of 1893, and was not acquired by the state "by reason of forfeiture for non-payment of taxes" in the years 1894, 1895, and 1896, it was not conveyed to Red Fork levee district by the act of 1899. Title to the island remained in the state and was subject to disposition by the state under Act No. 282. It follows that appellant acquired title to it by the deed of November 4, 1932, and that his title should be quieted.

The decree of the District Court is reversed, and the cause remanded for the entry of a new decree in accordance with this opinion.

### On Petition for Rehearing.

The decree from which the appeal was taken was not an interlocutory but a final decree in equity in a suit to quiet title; yet appellee urges us to remand the case to the District Court "for a new trial on its merits." It is obvious that such an unusual request cannot be granted.

In the District Court the appellee pleaded as defenses (1) a denial of appellant's title, (2) that appellee had title (a) by possession for more than seven years, (b) because the land involved was land added by accretion to land which she owned, and (c) that she had a deed from the state through Grady Miller, receiver. In a cross-petition she asked that her title be quieted.

The determination of title depended upon the history of the island. If it were a true island, it belonged to the state, and, if outside a levee district, could be disposed of by the state under Act No. 282 (Acts Ark.1917, p. 1468). If it were an accretion to appellee's land, it never was the property of the state but always was a part of appellee's land.

After the evidence was taken, for some reason the court and counsel for appellee concluded the case could be determined upon the issue that the plaintiff had no title. Accordingly the parties stipulated the facts essential to establish title originally in the state and to negative the claims of defendant by adverse possession and by accretion. It was stipulated that:

"For the sole and only purpose of determining the sufficiency of plaintiff's title * * *"

(a) On November 4, 1932, the plaintiff purchased the land from the state.

(b) Neither the plaintiff, defendants, nor any other person is in actual possession.

(c) For the purpose of determining the sufficiency of plaintiff's title, the land in controversy is a true island formation on the bed of the Mississippi river, subject to sale under Act No. 282.

Upon these conceded facts title was in the state in 1899, and the court being of the opinion that the land was donated to the Red Fork Levee District by Act No. 43 (Acts Ark.1899, p. 68), denied the prayer of appellant's complaint and quieted title by final decree in appellee as remote grantee of said levee district.

█ Upon appeal the decree was reversed and this court found that under these conceded facts title is in appellant. Now appellee asks for a new trial that she may be given another opportunity to urge in the trial court her claim by accretion and by adverse possession. Such procedure cannot be sanctioned by this court. The decree appealed from being a final decree (28 U.S.C.A. § 225) upon the merits it was an adjudication of every matter which might or could have been offered and received to defeat the appellant's demand. Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195. The appeal brought the entire case before the appellate court for review and every issue not urged here was waived. Sun Co. v. Vinton Petroleum Co. (C.C.A.) 248 F. 623, 624. It is the practice of Federal Courts of Appeal in reviewing final decrees in equity to dispose of the is-

sues finally on the record and not to remand such issues for further trial in the lower court. Harrison v. Clarke (C.C.A. 8) 182 F. 765, 767.

This case illustrates the wisdom of these rules. A new trial in the District Court for the purpose of determining appellee's title by accretion or by adverse possession may easily result in an absurdity, assuming that appellee is not estopped to raise these issues. If it should be found upon a new trial that the land in question is not a true island but is an accretion to appellee's land, then it did not belong to the state in 1899 nor in 1932 and the conceded foundation of appellant's title is removed, although such title has been found sufficient by this court. As a result, there will be two adjudicated paramount titles outstanding at the same time, one in Baxter and the other in McGee.

The record was stipulated in this court under Equity Rule 77 (28 U.S.C.A. following section 723), and apparently counsel was under the impression that this rule permitted trial of the issues and appeals seriatim, without waiver or estoppel. If that were true, there is no reason why the trial court on remand may not determine only one of the remaining issues with another appeal, and if this court should reverse, there may follow as many trials and reversals as there are issues. Rule 77 was not intended to have any such application. We hold that appellee, by failing to urge her defenses of accretion and adverse possession and by stipulating a record which negatived such defenses, thereby waived them; and that the case cannot be remanded for a new trial.

The petition for rehearing is denied.