**BOND et al. v. TOM et al. (UNITED STATES, Intervener).**

**No. 1257.**

District Court, N. D. Oklahoma.

Oct. 27, 1938.

158

James J. Mars, of Sapulpa, Okl., for plaintiffs.

Whit Y. Mauzy, U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl., for the United States.

FRANKLIN E. KENNAMER, District Judge.

■ This is a suit to quiet title to eighty acres of land in Creek County, and was instituted in the State District Court of that county. The United States intervened, and under the provisions of Section 3 of the Act of Congress of April 12, 1926 (44 Stat.L. 239, 240) properly removed the cause to this court.

The case has been submitted upon stipulated facts which present the following situation:

The lands involved were allotted to Sah-ta-quan-nay, enrolled as a full-blood member of the Creek Tribe of Indians. This allottee died in October, 1936, leaving a will devising the lands to two nephews, Euchee Tom and Sam Jack, and a niece, Susie Jack, in equal undivided parts. However, Susie Jack had preceded Sah-ta-quan-nay in death, and her undivided one-third interest passed by inheritance to her minor son, Daniel Lee Vaden. All of said beneficiaries under the will are full-blood Indians. During the lifetime of Sah-ta-quan-nay, the lands had been designated as tax exempt under the authority of the Act of Congress of May 10, 1928 (45 Stat. L. 495), the tax exemption to continue while the title remained in the Indian owner, or in any full-blood Indian heir or devisee of the land. The will of Sah-ta-quan-nay was admitted to probate in the County Court of Creek County, and in the settlement of the estate partition of the lands was sought in said state court, and a partition sale had therein, at which sale plaintiffs were the purchasers of the lands, and plaintiffs by this suit seek to quiet their title derived through such partition sale by the County Court of Creek County.

The intervener contends that the County Court of Creek County had no power or authority to make the partition sale to plaintiffs without the approval of the Secretary of Interior of the United States (no such approval was had), and, consequently, plaintiffs derived no title to the lands, and their case must fail.

■ All parties agree with the court that under the admitted factual situation no question other than the above is presented for decision. The determination of the issue of law, of course, must be resolved by an interpretation of the pertinent Acts of Congress, for it has been long settled that Congress has plenary power over the Indians and their property, and the extent of the jurisdiction exercisable by the state courts in that sphere is dependent on the will of Congress.

The title of plaintiffs was acquired by proceedings in conformity with Section 2 of the Act of Congress of June 14, 1918 (40 Stat.L. 606 [25 U.S.C.A. § 355]), and unless the power thereby granted to the state courts of Oklahoma to order a partition sale of lands of full-blood Indian heirs free of restrictions was taken away by subsequent legislation of Congress, the plaintiffs should prevail herein. Without citing the ruling provisions of the Act of Congress of May 27, 1908 (35 Stat.L. 312), it is well recognized that under the terms of said Act, the death of an allottee of the Five Civilized Tribes operated to remove the restrictions against the alienation of his lands, except as to the interests of certain heirs, including full-bloods, and full-blood heirs were permitted to convey with the approval of the proper Oklahoma county court. Doubt having arisen as to whether the state courts of Oklahoma were vested by this Act with the power to partition lands of full-blood members of the Five Civilized Tribes, Congress passed the Act of June 14, 1918, which provided in Section 2 thereof, 25 U.S.C.A. § 355:

"That the lands of full-blooded members of any of the Five Civilized Tribes are made subject to the laws of the State of Oklahoma, providing for the partition of real estate. Any land allotted in such proceedings to a full-blood Indian, or conveyed to him upon his election to take the same at the appraisement, shall remain subject to all restrictions upon alienation and taxation obtaining prior to such partition. In case of a sale under any decree, or partition, the conveyance thereunder shall operate to relieve the land described of all restrictions of every character."

As mentioned before, and as clearly appears from the terms of the above quoted section, Congress by this enactment conferred the power on the appropriate Oklahoma state courts to partition lands of full-blood Indians, with the restrictions against alienation, and taxation to remain on the lands if partitioned in kind to full-blood Indians, but in case of inability to partition in kind and a partition sale being made necessary, such sale operated to wholly relieve the lands sold of all restrictions of every character. Congress recognized the frequent situation arising in partition cases where no fair and equitable division of land in kind can be made by a court, and that a sale of the whole must sometime result in order to accomplish partition, and further that only by an abolition of restrictions could such sale be made at any fair price. Doubtless, also Congress felt that the state courts would properly safeguard the interests of the Indian owners in making such sales, and that it was unnecessary to further burden the procedure with the additional requirement that the Secretary of the Interior approve the sales.

It is not contended by the intervener that in the subsequent legislation by Congress there is contained any express repeal of the Act of 1918 authorizing the partition of lands of full-blood Indians by the state courts, but it does assert that the later Acts prevent such partition where, as in the instant case, the land has been set aside as tax exempt and has been devised by a full-blood Indian to full-bloods. An examination of the Act of May 10, 1928, discussed in the briefs of both parties, discloses that it extended the restrictions against alienation of lands allotted to members of the Five Civilized Tribes of one-half or more Indian blood for an additional period of twenty-five years from April 26, 1931, with authority in the Secretary of

Interior to remove the restrictions in whole or in part. As to taxation, this Act provided that the allotted, inherited and devised restricted lands in excess of 160 acres owned by any such restricted Indian should be subject to taxation after April 26, 1931, and that designation of the tax exempt land of any Indian owner should be made by a certificate properly recorded. No mention is made in this Act of the Act of 1918, but it is well to note that Section 5 of the Act provided: "That this Act shall not be construed to reimpose restrictions heretofore or hereafter removed by the Secretary of the Interior or by operation of law, nor to exempt from taxation any lands which are subject to taxation under existing law."

Therefore, it cannot be successfully contended that there is anything in this Act, of itself, which destroys the power of the Oklahoma courts to make a partition sale of lands of full-blood Indians. On the other hand, it may be argued with a good deal of soundness that the above quoted section 5 recognized that the 1918 Act was still in effect and restrictions might "hereafter" be removed by its provision that the court could sell land at a partition sale free of all restrictions, which would in effect work a removal of restrictions by "operation of law", that is, the law written into the 1918 Act.

Intervener's position finds its strongest support in a proviso contained in Section 1 of the Act of Congress of January 27, 1933 (47 Stat.L. 777). The main part of this section, including the mentioned proviso (which is italicised for the purposes of this opinion) is, as follows:

"That all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until April 26, 1956, subject to expenditure in the meantime for the use and benefit of the individual Indians to whom such funds and securities belong, under such rules and regulations as said Secretary may prescribe: *Provided, That where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized*

*Tribes is acquired by inheritance, devise, gift, or purchase, with restricted funds, by or for restricted Indians, such lands shall remain restricted and tax-exempt during the life of and as long as held by such restricted Indians, but not longer than April 26, 1956, unless the restrictions are removed in the* meantime in the manner provided by law * * *."

As pointed out by plaintiffs, the above proviso is not germane to the principal clause of the above enactment.. In United States v. Morrow, 266 U.S. 531, 45 S.Ct. 173, 69 L.Ed. 425, it was said [page 174]: "The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation. * * * Its grammatical and logical scope is confined to the subject-matter of the principal clause."

Nevertheless, the proviso is troublesome of proper construction and does afford some basis for the contention of intervener. However, as plaintiffs suggest, when it is read in connection with the last section (section 8) of the Act, it would seem that its intended purpose was not to interfere with prior existing Acts such as the Act of 1918, but rather to recognize that their terms were still in force. The last clause of the proviso, namely: "unless the restrictions are removed in the meantime in the manner provided by law" might well be considered as referring to a removal of restrictions by a partition sale through the county court as well as a removal by act of the Secretary of the Interior—both methods of removal being "in the manner provided by law."

The cases of Darks v. Ickes, 63 App. D.C. 56, 69 F.2d 230 and King v. Ickes, 62 App.D.C. 83, 64 F.2d 979, both construing the Act of 1933, and cited by intervener give no aid in the solution of the immediate problem. Both cases involved funds in the possession of the Secretary at the time of the death of the allottee, and the 1918 Act was in no manner involved. In fact, it appears there is no reported case which gives any real assistance.

There is, however, some very clear Departmental construction of the effect of the troublesome proviso. In an opinion given to the Secretary of the Interior on March 14, 1934, Mr. Nathan R. Marigold answers in the negative this question: "Does the proviso take away from the county courts the jurisdiction to approve conveyances by full-blood Indian heirs where such heirs have inherited the entire, interest in lands which were restricted and tax exempt in the hands of the original allottee so that a removal of restrictions by the Secretary of Interior is necessary before the land can be alienated by the full-blood heirs?"

If the prior legislation granting jurisdiction to the county courts to approve conveyances by full-blood Indian heirs were not disturbed by this proviso, certainly it would likewise not affect partition sales made by the state courts. In a letter to Senator Elmer Thomas, dated January 8, 1936, written by Wm. Zimmerman, Assistant Commissioner of Indian Affairs, and approved by T. A. Walters, First Assistant Secretary, the effect of the proviso in its relation to Section 2 of the Act of June 14, 1918, 25 U.S.C.A. § 355, is discussed. After quoting the last named section, Mr. Zimmerman says: "The foregoing provision applies to lands inherited by full-blood heirs and especially subject such lands to the laws of Oklahoma with respect to the partition of real estate. There is no express repeal of this provision in the Act of January 27, 1933, nor is there any indication in that act that Congress intended to repeal the prior law so as to withdraw these lands from the partition laws of Oklahoma."

Moreover, the reported hearings before a subcommittee of the Committee on Indian Affairs of the United States Senate, held on May 16, 17 and 18, 1932, for the purpose of considering H.R. 8750, the first section of which is identical with the first section of the Act of January 27, 1933 as finally passed by Congress (including the proviso), reflect that it was not the intention of Congress in the enactment of this proviso to interfere with the jurisdiction of the Oklahoma courts previously conferred by Congress.

After a careful consideration of the arguments submitted in the briefs of counsel, and a close study of the Act of 1933 in its relation to the previous Acts of Congress dealing with the members of the Five Civilized Tribes and their property, the conclusion is reached that the Act of June 14, 1918 is not affected by the mooted proviso awkwardly placed in the 1933 Act which mainly related to funds and securities in the hands of the Secretary of the Interior. Therefore, it follows that the procedure in the County Court of Creek County whereby the plaintiffs secured title

to the lands involved was properly within the jurisdiction and power of said court as conferred upon it by Congress, and that a decree should be entered herein quieting the title of plaintiffs to said real estate as against the defendants and the intervener.