Justice SOTOMAYOR,
with whom Justice GINSBURG joins, dissenting.
Chapter 9 of the Federal Bankruptcy Code allows States’ “municipalities” — cities, utilities, levee boards, and the like — to file for federal bankruptcy with their State’s authorization. . But the Code excludes Puerto Rican municipalities from accessing federal bankruptcy. 11 U.S.C. §§ 101(52), 109(c)(2). Because of this bar, Puerto Rico enacted its own law in 2014— the Recovery Act — to allow its utilities to restructure their significant debts outside the federal bankruptcy process.
The Court today holds that Puerto Rico’s Recovery Act is barred by § 903(1) of Chapter 9 of the Bankruptcy Code, which prohibits States from creating their own bankruptcy processes for their insolvent municipalities. § 903(1). Because Puerto Rican municipalities cannot access Chapter 9’s federal bankruptcy process, however, a nonfederal bankruptcy solution is not merely a parallel option; it is the only existing legal option for Puerto Rico to restructure debts that could cripple its citizens. The structure of the Code and the language and purpose of § 903 demonstrate that Puerto Rico’s municipal debt restructuring law should not be read to be prohibited by Chapter 9.
I respectfully dissent.
I
The Commonwealth of Puerto Rico and its municipalities are in the middle of a fiscal crisis. Ante, at 1942. The combined debt of Puerto Rico’s three main public utilities exceeds $20 billion. These utilities *1950 provide power, water, sewer, and transportation to residents of the island. With rising interest rates and limited access to capital markets, their debts are proving unserviceable. Soon, Puerto Rico and the utilities contend, they will be unable to pay for things like fuel to generate electricity, which will lead to rolling blackouts. Other vital public services will be imperiled, including the utilities’ ability to provide safe drinking water, maintain roads, and operate public transportation.
When debtors face untenable debt loads, bankruptcy is the primary tool the law uses to forge workable long-term solutions. By requiring a debtor and creditors to negotiate together and forcing both sides to make concessions within the limits set by law, bankruptcy gives the debtor a “fresh start,” discourages creditors from racing each other to sue the debtor, prohibits a small number of holdout creditors from blocking a compromise, protects important creditor rights such as the prioritization of debts, and allows all parties to find equitable and efficient solutions to fiscal problems. See Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007); Young v. Higbee Co., 324 U.S. 204, 210, 65 S.Ct. 594, 89 L.Ed. 890 (1945).
These concerns are starkly presented in the context of municipal entities like public utilities. While a business corporation can-use bankruptcy to reorganize, and, if that fails, fold up shop and liquidate all of its assets, governments cannot shut down power plants, water, hospitals, sewers, and trains and leave citizens to fend for themselves. A “fresh start” can help not only the unfortunate individual debtor but also — and perhaps especially — the unfortunate municipality and its people. See United States v. Bekins, 304 U.S. 27, 53-54, 58 S.Ct. 811, 82 L.Ed. 1137 (1938).
Congress has excluded the municipalities of Puerto Rico and the District of Columbia from the federal municipal bankruptcy scheme in Chapter 9 of the Bankruptcy Code. See 11 U.S.C. §§ 101(52), 109(c). So, in 2014, the Puerto Rican Government enacted the Puerto Rico Public Corporation Debt Enforcement and Recovery Act (Recovery Act or Act). 2014 Laws P.R. p. 371. The Act authorizes Puerto Rico’s public utilities to restructure their debts while continuing to provide essential public services like electricity and water. Portions of the Act mirror Chapter 9 of the Bankruptcy Code and allow Puerto Rico’s utilities to renegotiate their debts with their creditors. See ante, at 1942-1943. Like a restructuring plan filed under Chapter 9, a restructuring plan under the Recovery Act that is approved by at least a majority of creditors and a court would be binding on all creditors, including objecting holdouts.
After the Recovery Act was signed into law, mutual funds and hedge funds holding bonds of the Puerto Rico Electric Power Authority filed two lawsuits seeking to enjoin Puerto Rico’s enforcement of the Act. The District Court held that the Recovery Act could not be enforced because, inter alia, it was prohibited by § 903(1) of the Bankruptcy Code. The First Circuit agreed that § 903(1) pre-empted the Act, and did not address whether some provisions of the Act might be unlawful for other reasons. This Court now affirms.
II
Bankruptcy is not a one-size-fits-all process. The Federal Bankruptcy Code sets out specific procedures and governing law for--each type of entity that seeks bankruptcy protection. To see how this approach works, consider the structure of the Code in more depth.
*1951 Chapter 1 is the starting point. It sets out how to read the Code. See 11 U.S.C. § 101 et seq. For example, § 101 sets out general definitions, and § 102 provides rules of construction. Now skip ahead to § 109, titled, “Who may be a debtor.” That section tells would-be debtors and the interested parties in their bankruptcy which specific bankruptcy laws apply to them. For example, § 109 tells an ordinary person seeking to restructure her debts to do so using the rules outlined in Chapter 7, § 109(b), or those enumerated in Chapter 13, § 109(e). It tells a family farm or fisherman to use the rules outlined in Chapter 12. § 109(f). Certain corporations can use Chapter 7, § 109(b), or Chapter 11, § 109(d). And a municipality’s bankruptcy is governed by the rules in Chapter 9. § 109(c)(1).
Because § 109 tells different kinds of debtors which bodies of bankruptcy law apply to them, the Court has described that section as a “ ‘gateway’ ” provision. Ante, at 1944 -1945. Once an entity meets the eligibility requirements for a specific “gateway” set out in § 109 and elects to pass through that gateway, it becomes subject to the relevant chapter of the Code — 7, 9, 11, 12, or 13. The debtor, its creditors, and any other interested parties are governed only by that chapter and the chapters of the Bankruptcy Code — like Chapter 1 — that apply to all cases. See § 103; 1 Collier Pamphlet Edition, Bankruptcy Code 2015, p. 59 (“[A]s a general rule, the provisions of the particular chapter apply only in that chapter”).
Interpreting statutory provisions in the context of the operative chapters in the Bankruptcy Code in which they appear is not unusual — it is how the Code is designed to work. For example, both Chapter 9 and Chapter 13 require the debtor to “file a plan” proposing how the court shoüld reorganize its debts. Compare §§ 941-946 (“The Plan” under Chapter 9) with §§ ,1321-1330 (“The Plan” under Chapter 13). But no bankruptcy court or practitioner would suggest that a Chapter 9 “plan” also has to satisfy the requirements of Chapter 13. The Code is read in context.
These cases concern § 109’s “gateway” for municipalities. That provision says that a municipality may file for bankruptcy under Chapter 9 if and only if it meets five eligibility criteria. The debtor must (1) be “a municipality,” § 109(c)(1); (2) be “specifically authorized ... by State law” to seek bankruptcy restructuring, § 109(c)(2); (3) be “insolvent,” § 109(c)(3); (4) have a “desir[e] to effect a plan to adjust” its debts, § 109(c)(4); and (5) have attempted to negotiate with its creditors, with some exceptions, § 109(c)(5).
The second eligibility requirement is relevant here. Only a municipality “authorized ... by State law” may pass through the “gateway” and file for bankruptcy under Chapter 9’s provisions. But Chapter l’s definitional provision, which applies throughout the Code, provides that the “term ‘State’ includes the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9 of this title.” § 101(52). It is undisputed that the “except for the purpose of defining who may be a debtor under chapter 9” clause is referring to the second eligibility prerequisite in § 109’s gateway provision. Ante, at 1945-1946. So, in short, Puerto Rico cannot “specifically authoriz[e]” any of its municipalities to apply for Chapter 9 bankruptcy. No Puerto Rican municipality will thus satisfy the state authorization requirement of § 109’s gateway for municipalities, and so no Puerto Rican municipality can access Chapter 9.[1]
*1952 The question in these cases is whether § 903(1), a pre-emption provision in Chapter 9, still applies to Puerto Rico even though its municipalities are not eligible to pass through the “gateway” into Chapter 9. It should not. Section 903 by its terms presupposes that Chapter 9 applies only to States who have the power to authorize their municipalities to invoke its protection.
Section 903 delineates the balance of power between the States that can authorize their municipalities to access Chapter 9 protection and the bankruptcy court that would preside over any municipal bankruptcy commenced under Chapter 9. To understand that interplay, and why § 903(1) does not pre-empt the Recovery Act, it is important to consider that statutory provision in context.
Section 903, titled “Reservation of State power to control municipalities,” reads in full:
“This chapter [Chapter 9] does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—
“(1) a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and
“(2) a judgment entered under such a law may not bind a creditor that does not consent to such composition.”
This “reservation” of power to the States was added to the Code in response to this Court’s earlier recognition that States possess plenary control over their municipalities, particularly in fiscal matters. Faitoute Iron & Steel Co. v. Asbury Park, 316 U.S. 502, 509, 62 S.Ct. 1129, 86 L.Ed. 1629 (1942), overruled in part by Act of July 1, 1946, 60 Stat. 415. Section 903 says that States continue to possess those powers not implicated by the bankruptcy itself by noting that “[t]his chapter,” i.e., Chapter 9, “does not limit or impair the power of a State to control” its municipalities. § 903. For example, even if a municipality is in Chapter 9 bankruptcy, a State could still revoke its charter.
Section 903, however, also subjects that broad reservation to an exception articulated in the pre-emption provision that the Court now says bars Puerto Rico’s Recovery Act. States may control their municipalities, but they may not “prescrib[e] a method of composition of indebtedness of [a] municipality” that “bind[s] any creditor that does not consent to such composition.” § 903(1).
But this distribution of power between the State and the bankruptcy court' is irrelevant to Puerto Rico. Because Puerto Rico’s municipalities cannot pass through the § 109(c) gateway to Chapter 9, nothing in the operation of a Chapter 9 case affects Puerto Rico’s control over its municipalities. The “reservation” preamble is therefore meaningless to Puerto Rico — there is no power to reserve from Chapter 9’s operation. And if this preamble does not and cannot apply to Puerto Rico, it follows that § 903(l)’s proviso qualifying that reservation of power to the States does not apply to Puerto Rico either. See, e.g., United States v. Morrow, 266 U.S. 531, 534-535, 45 S.Ct. 173, 69 L.Ed. 425 (1925).
This understanding of § 903 is fundamentally confirmed by the careful gateway *1953 structure the Code sets out for understanding how its chapters work together. See Utility Air Regulatory Group v. EPA, 573 U.S.-,-, 134 S.Ct. 2427, 2441, 189 L.Ed.2d 372 (2014) (“ ‘ “[W]ords of a statute must be read in their context and with a view to their place in the overall statutory scheme” ’ ” (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000))). Chapter l’s definitions section prevents Puerto Rico from defining “who may be a debtor under chapter 9” under § 109(c)’s gateway. Because of the structure of the Code, that change to Chapter l’s definition has ripple effects. By amending the definition of State to exclude Puerto Rico, the District of Columbia, and their municipalities from § 109(c)’s gateway, Congress excluded Puerto Rico from Chapter 9 for all purposes — it shut the gate and barred it tight. And because Chapter 9’s process and rules by their terms can only affect municipalities and States eligible to pass through the gateway in § 109(c), that must mean that none of Chapter 9’s provisions — including § 903’s pre-emption provision — apply to Puerto Rico and its municipalities.
Ill
The Court rejects contextual analysis in favor of a syllogism. According to the Court, § 903(1) pre-empts all “State” composition laws like Puerto Rico’s that bind nonconsenting municipal creditors. “State” includes Puerto Rico, “except for the purpose of defining who may be a debtor under chapter 9 of this title,” § 101(52), which is a reference to § 109(c). Thus, according to the Court, while the definition of “State” prevents Puerto Rico from authorizing its municipalities to seek Chapter 9 protection under § 109(c), it has no effect on the pre-emption clause in § 903(1).
The majority’s plain meaning syllogism is not without force. But it ignores this Court’s repeated exhortations to read statutes in context of the overall statutory scheme. Utility Air, 573 U.S., at -, 134 S.Ct., at 2441-2442. In context, for the reasons discussed, § 903 is directed to States that can approve their municipalities for Chapter 9 bankruptcy. Moreover, in an attempt to buttress its syllogism, the majority’s' analysis makes an additional critical misstep.
The majority argues that, in light of the longstanding nature of the § 903(l)’s preemption provision to preclude state municipal bankruptcy laws, “[h]ad Congress intended to ‘alter this fundamental detail’ of municipal bankruptcy” to not apply to Puerto Rico, “we would expect the text of the amended definition to say so. Congress ‘does not, one might say, hide elephants in mouseholes.’ ” Ante, at 1947 (quoting Whitman v. American Trucking Assns., Inc., 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed,2d 1 (2001); citation and brackets omitted). But the Court ignores that Congress already altered the fundamental details of municipal bankruptcy when it amended the definition of “State” to exclude Puerto Rico from authorizing-its municipalities to take advantage of Chapter 9. Nobody has presented a compelling reason for why Congress would have done so, and the legislative history of the amendment is unhelpful.[2] Under either interpretation the scheme has been funda *1954 mentally altered ■ by Congress. And, in context, the proper understanding of that alteration is that Puerto Rico and its municipalities have been removed entirely from Chapter 9 — both from the benefits it provides and from the' burden of the preemption clause in § 903(1).
Pre-emption cases may seem like abstract discussions of the appropriate balance between state and federal power. But they have real-world consequences. Finding pre-emption here means that a government is left powerless and with no legal process to help its 3.5 million citizens.
Congress could step in to resolve Puerto Rico’s crisis. But, in the interim, the government and people of Puerto Rico should not have to wait for possible congressional action to avert the consequences of unreliable electricity, transportation, and safe water — consequences that members of the Executive and Legislature have described as a looming “humanitarian crisis.” The White House, Addressing Puerto Rico’s Economic and Fiscal Crisis and Creating a Path to Recovery, p. 1 (Oct. 26, 2015) (italics deleted); Letter from Sen. Richard Blumenthal et al. to Charles Grassley, Chair, Senate Committee on the Judiciary (Sept. 30, 2015). Statutes should not easily be read as removing the power of a government to protect its citizens.
For the foregoing reasons, I would hold that § 903(1) of the Bankruptcy Code does not pre-empt Puerto Rico’s Recovery Act. I respectfully dissent.

. Puerto Rico was initially included in the scope of Chapter 9. § 1(29), 52 Stat. 842. *1952 But in 1984, Congress amended the Bankruptcy Code, without comment, to bar Puerto Rico and the District of Columbia from authorizing their municipalities to access Chapter 9. § 421(j)(6), 98 Stat. 368, codified at 11 U.S.C. § 101(52).

. The only comment on excluding Puerto Rico from Chapter 9 came from Professor Frank Kennedy, former Executive Director of the Commission on Bankruptcy Laws, who said: “I do not understand why the municipal corporations of Puerto Rico are denied by the proposed definition of ‘State’ of the right to seek relief under Chapter 9.” Bankruptcy Improvements Act, Hearing on S. 333 et al. before the Senate Committee on the Judiciary, 98th Cong., 1st Sess., 326 (1983).