## STATE OF MAINE

### *vs.*

### BENJAMIN CHADBOURNE and BENJAMIN WALLACE CHADBOURNE.

### Piscataquis. Opinion February 24, 1883.

*Challenges. R. S., c. 134, § 12 ; c. 82, § 66 ; stats. 1872, c. 78 ; 1879, c. 90.*

At the trial of a person upon an indictment for murder, the state is entitled to five peremptory challenges.

Stat. 1872, c. 78, was an amendment of R. S., c. 134, § 12, and although its effect was for a time suspended by the abolition of the death penalty as a punishment for crime, it again became operative by virtue of stat. 1879, c. 90. Another effect of the stat. of 1879, was to deprive the state of the two peremptory challenges provided for in R. S., c. 82, § 66, in the trial of cases formerly capital.

ON EXCEPTIONS.

Indictment for murder.

The opinion states the case.

*Henry B. Cleaves,* Attorney General, and *Joseph B. Peaks,* County Attorney, for the State.

*Josiah Crosby* and *A. M. Robinson,* for defendants.

WALTON, J. The defendants have been tried and found guilty of murder. The case is before the law court on exceptions. The exceptions state that while a jury was being impaneled to try the defendants, the attorney for the State claimed and was allowed four peremptory challenges. The defendants contended that the State was entitled to only two peremptory challenges, and that the allowance of four was erroneous. We think not. We think the State was entitled to five peremptory challenges. The act of 1872, c. 78, gave the State that number in capital cases ; and, notwithstanding this act was for a time rendered practically inoperative by the abolition of the death penalty, we think it has again become operative, and that it is now applicable to cases, which, though not now capital, were such when the act was passed.

In coming to this conclusion we have regarded the act of 1872 as an amendment of the Revised Statutes, c. 134, § 12. Originally that section related exclusively to the trial of capital cases. It directed how juries should be impaneled, how the right of challenge should be exercised, and how many peremptory challenges the person indicted should be entitled to ; but it omitted to give any peremptory challenges to the State. This omission was probably accidental ; for, at the time of the revision of the statutes, the act of 1867, c. 108, was in force, and that statute gave the State at least one peremptory challenge in all criminal cases, capital or otherwise ; and this statute is cited in the margin of section twelve, but the right of peremptory challenge thereby secured to the State is omitted from the text. To remedy this omission and enlarge the number of peremptory challenges to which the State should be entitled, the act of 1872, c. 78, was passed. This act declared in brief terms that in the trial of capital cases the State should have the right to challenge peremptorily five persons. The effect of this statute was to amend section twelve of chapter one hundred and thirty-four of the revised statutes. That section directed how juries should be organized for the trial of capital cases, and this statute changed the mode of organization therein provided for, to the extent of allowing the State as well as the person indicted to

challenge peremptorily some of the jurors as their names should be drawn from the box, and before they should be sworn. This new right secured to the State was one which could not be exercised except in connection with the proceedings provided for in section twelve. It was a right which could not by any possibility be exercised independently of that section. It modified and materially affected the proceedings to be had under that section. In other words, it was, to all intents and purposes, an amendment of it. True, the act itself does not declare in terms that it is an amendment of any previous statute. But it was an amendment, and an amendment of the section we have named; for, by it, the proceedings to be had under that section were modified and changed. And it is the effect, not the name given to an act, that determines its character. If a subsequent statute does in fact modify and change the proceedings to be had under a former act, the later act is an amendment of the earlier act, and must be so regarded and treated, although it is not so called in the act itself.

Regarding the act of 1872, c. 78, as an amendment of the R. S., c. 134, § 12, we come to the question whether, when an act of the legislature declares that the proceedings in a certain class of cases shall be as required by a specified chapter of the Revised Statutes, the meaning is that the proceedings shall conform to that chapter in its original or its amended form. If there is nothing in the subject matter, or in the act itself, to indicate the contrary, we have no hesitation in saying that the proceedings should conform to the chapter named in its amended form.

To illustrate : This same chapter (c. 134) has been amended in another particular. Section nineteen, as originally enacted, declared that the husband or wife of the accused should be a competent witness, when called with the other's consent. This section was amended in 1873, (c. 137,) so as to make either a competent witness without the other's consent. Now, the act of 1879, c. 90, declares in general terms that in the trial of cases formerly capital, the proceedings shall be as set forth in chapter 134 of the revised statutes, excepting that the person indicted shall not challenge peremptorily more than five of the jurors

while the panel is being formed. Is the amendment of section nineteen lost in this class of cases? Is it possible to believe that the legislature intended to abrogate the important rule of evidence established by this amendment, and have one rule for the trial of cases formerly capital, and another and a different rule for all other cases? We think not. So with respect to section twelve. We cannot doubt that the legislature intended that the proceedings under that section should be conformable to it in its amended and not in its original form.

We are strengthened in this view by the circumstances under which the act of 1879, c. 90, was passed. From the time of the passage of the act of 1872 till 1876, the State was undoubtedly entitled to five peremptory challenges in all capital cases. During 1876 the death penalty as a punishment for crime was abolished. Act 1876, c. 114. This rendered the right of peremptory challenge existing in capital cases nugatory; not because the statutes giving it had been repealed, for they had not; but because there were no longer any cases to which it could be applied. This was a result probably not foreseen by the legislature. And when it was judicially declared in *State* v. *Smith,* 67 Maine, 328, the very next legislature passed the act of 1879, c. 90, declaring in effect that such should not be the result; that in the trial of cases formerly capital the proceedings as set forth in chapter 134 of the Revised Statutes should be observed in all cases, excepting that the person indicted should not challenge peremptorily more than five of the jurors while the panel was being formed. The exception in the act shows that the attention of the legislature was directed specifically to the matter of peremptory challenges. It was not overlooked. The number to which the person indicted should be entitled was reduced from ten to five—the very number to which the State was entitled under the act of 1872. That act remained unrepealed. Now, if the legislature had intended to deprive the State of the number of peremptory challenges to which it was entitled under that act, is it not almost certain that it would have said so? Would it have remained silent and left so important a change to be accomplished by a doubtful inference? We think not. We

think the act of 1879 itself, and especially the circumstances preceding and accompanying its passage, tend strongly to show that the legislature did not intend to deprive the State of the peremptory challenges to which it was entitled under the act of 1872; but, on the contrary, intended to place the State and the accused in this particular upon terms of equality, allowing to each the same number.

It is assumed in argument by the defendants' counsel, that the ruling at the trial that the State was entitled to four peremptory challenges, was based upon the idea that the State was entitled to two on account of each defendant; and it is against this doubling process that their arguments are particularly directed. They contend that the State is entitled to no more peremptory challenges when two are tried than when only one is tried. The exceptions show that the defendants' counsel so contended at the trial. But the exceptions do not show on what ground the attorney for the State based his claim to four peremptory challenges, nor on what ground the court ruled that he was entitled to that number. Nor is it important to know; for the defendants could only be aggrieved, if aggrieved at all, by the number actually allowed, and not by the reasoning by which the court came to the conclusion that the State was entitled to that number. If, as we hold, the State was entitled to five peremptory challenges, the defendants could not be aggrieved by the allowance of a less number, although the reduction was made upon erroneous grounds. It would be an error operating in their favor, not against them.

Our conclusion is that the State was entitled to five peremptory challenges; that although the right to this number was for a time suspended by the abolition of the death penalty, subsequent legislation has restored it. It seems to us that a contrary conclusion could be reached only by a very strict construction of the statutes bearing upon the question—in fact, a construction so strict that it would probably defeat the legislative will and render further legislation necessary. We are unwilling to adopt such a construction. Statutes giving to parties peremptory challenges are not penal. They impose no hardships. Their only

tendency is to secure fairness and impartiality. Every one acquainted with jury trials knows that unfit jurors will sometimes remain upon the panel after every effort to remove them for cause has failed. This is an evil that can only be remedied by peremptory challenges; and the statutes giving them should be liberally construed, so as best to accomplish the purpose for which they were intended.

Another consideration should not be overlooked. It seems to have been assumed at the time of the trial of this case that the State was entitled to at least two peremptory challenges by virtue of R. S., c. 82, § 66, and R. S. c. 134, § 20; and it was to the doubling of this number that the defendants objected. At least, such seems to have been the understanding of the defendants' counsel; and they assume that such is the law in their arguments before the law court. But this assumption is not well founded. The effect of the act of 1879 was to deprive the State of the two peremptory challenges provided for in § 66; for the challenges provided for in that section can be claimed only when a jury is drawn and impaneled as therein provided; and the act of 1879, by declaring in effect that juries must be drawn and impaneled as provided in chapter 134, § 12, virtually forbids their being drawn and impaneled as provided in chapter 82, § 66. Consequently, if the act of 1879 did not restore to the State the five peremptory challenges provided for in the act of 1872, it would seem to have left the State without any peremptory challenges in that important class of cases formerly capital, and now punishable by imprisonment in the State Prison for life; and the question whether the number provided for in c. 82, § 66, was properly doubled, on account of there being two defendants, becomes unimportant; for the State would be entitled to none under that section. It is impossible to believe that the legislature intended such a result. It is much more reasonable to believe that the legislature intended to restore to the State the five peremptory challenges to which it had formerly been entitled in this class of cases than to believe that it intended to leave the State with no peremptory challenges. We think the act of 1879 did restore to the State the five peremptory challenges

provided for in the act of 1872; that it did this by declaring that the proceedings in cases formerly capital should be as set forth in chapter 134; and that, by chapter 134, was meant that chapter in its amended and not in its original form.

<em>Exceptions overruled.</em>

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.