PENNSYLVANIA RAILROAD COMPANY *v.* ROBERT
S. GREEN, INC.
[No. 18, October Term, 1936.]

*Decided November 12th, 1936.*

The cause was argued before BOND, C. J., URNER,
OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHN-
SON, JJ.

*Edward E. Hargest, Jr.,* and *O. Bowie Duckett, Jr.,*

with whom were *Hargest, LeViness, Duckett & McGlannan* on the brief, for the appellant.

*J. Cookman Boyd, Jr.*, with whom were *F. Murray Benson* and *Boyd & Boyd* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

This appeal presents for review ten exceptions reserved by the plaintiff, in the course of the trial below, to rulings of the trial court—nine of which relate to questions of evidence, and one to the action of the court upon the prayers.

The suit is an action in ejectment instituted by the appellant against the appellee, to recover a lot of ground adjacent to a railroad siding of the appellant, located at or near its Caton Avenue yard, in the City of Baltimore, and which is particularly described in the declaration. The tenth exception was taken to the action of the court in rejecting all of the plaintiff's prayers, and in granting a prayer of the defendant by which the court, sitting as a jury, was directed to find a verdict for the defendant, upon the ground that under the pleadings in the case the plaintiff offered no legally sufficient evidence to entitle it to recover.

Inasmuch as this latter exception, in conjunction with the second exception to rulings on evidence, raises the most important question in the case, and for the further reason that the remaining rulings on evidence to which the other exceptions were directed were evidently predicated upon the trial court's theory of the case, as indicated by its favorable ruling upon the defendant's demurrer prayer, it will be first considered.

The amended declaration, which was filed on May 7th, 1935, alleges that the plaintiff, the Pennsylvania Railroad Company, the appellant here, in January, 1918, was in possession of the property involved in this suit, and that the defendant, Robert S. Green, Inc., the appellee, on or about the 1st day of March, 1921, wrongfully entered upon the premises, ejected the plaintiff therefrom, and

ever since and still retains possession thereof. And in compliance with a motion for a bill of particulars the plaintiff estimated the annual rental value of the property now in controversy, from March 1st, 1921, to March 1st, 1935, fourteen years, at $145 per annum, and claimed the sum of $2,030 damages for the wrongful detention of the same.

In support of its contention, the plaintiff produced Thomas N. Copenhaver, a witness, who testified that he had examined the title to the property, whereupon the plaintiff offered in evidence an original deed from Charles F. Diggs to the Philadelphia, Baltimore & Washington Railroad Company, dated January 29th, 1904, and recorded among the land records of Baltimore City, conveying two pieces of leasehold property.

It was shown by the witness that one of these properties, designated as "Lot No. 1," in said deed, embraced the property in litigation; that said property was subject to an irredeemable ground rent of $162.50; and that the leasehold interest therein, as revealed by the land records of Baltimore City, was then vested in the Philadelphia, Baltimore & Washington Railroad Company, subject to the ground rent aforesaid and free from any other encumbrances.

Thereupon the plaintiff followed its chain of title with the introduction of an original lease from the Philadelphia, Baltimore & Washington Railroad Company to the plaintiff, dated the 13th day of December, in the year 1917, purporting to lease for the period of 999 years, accounting from January 1st, 1918, certain railroad property and franchises, as particularly described therein.

It is undisputed that the property in controversy is embraced in said lease, and it was admitted as the original lease between the two companies, without objection. Upon further examination of the witness, Copenhaver, however, it was shown that the latter document was not recorded among the land records of Baltimore City, and, upon the contention of the defendant that it had permitted the introduction of the lease, without objection, as

being the original paper, and not for the purpose of lending strength to the plaintiff's title, the trial court permitted the defendant to withdraw its consent to the admission of the lease, and assert its objection to such admission. At a subsequent session of the court, the same witness testified that the property mentioned in the declaration was embodied in the first lot of ground described in the lease, whereupon the defendant raised the objection that said lease was not recorded among the land records of Baltimore City, and the court sustained the objection and refused to admit in evidence a certified copy of said lease, as filed in the office of the Secretary of State, on December 21st, 1917, with an annexed copy of the order of the Public Service Commission of Maryland, approving and permitting the execution of the lease. This ruling forms the basis of the second exception.

Section 219 of article 23 of the Code provides as follows: "It shall be lawful for any railroad company incorporated under the laws of this State, to lease its railroad and franchise for the operation thereof to any other railroad company incorporated under the laws of this or of any other State of the United States whose railroad, within or without this State, shall, either directly or by means of intervening line, connect with the railroad so to be leased to said company, and thus forming a continuous route or routes for the transportation of persons and property. * * * The agreement containing the terms and conditions of any proposed lease shall, after due approval by the board of directors of each company party thereto, be submitted to the stockholders of such one or more of said railroad companies as shall have been incorporated under the laws of this State at either a special meeting thereof, duly called in accordance with the charter and by-laws of the companies whereof they are stockholders for the consideration of the same, or at any annual meeting thereof, likewise duly called, and in the call for which it shall be stated that the said agreement will be considered at such meeting; and if approved by a vote of not less than three-fourths of the capital stock of such com-

pany or companies outstanding and entitled to vote, the said agreement shall then be duly executed by each of the parties thereto, and, when so executed, a copy thereof, duly certified by the secretary of each of the companies parties thereto under their respective corporate seals, shall be filed in the office of the secretary of state of the State of Maryland, and upon such filing the said agreement and the lease thereby effected shall become and be in full force and operation in accordance with its terms."

A stipulation is found in the record that the Philadelphia, Baltimore & Washington Railroad Company is a Maryland corporation.

At the outset, it will be observed that the vital question before us is whether the filing of the lease with the Secretary of State, under all the facts in the case, obviates the necessity of recording the same among the land records of the City of Baltimore.

The general conveyancing statutes of the state provide as follows:

Article 21, section 1 (chapter 210, Acts of 1890, etc.) : *"Conveyances in General.* 1. No estate of inheritance or freehold, or any declaration or limitation of use, or any estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed, acknowledged and recorded as herein provided." Article 21, section 13 (chapter 154, Acts of 1856, etc.) : "Every deed of any of the interests or estates mentioned in the first section of this article shall be recorded within six months from its date, in the county or city in which the land affected by such deed lies; and where it lies in more than one county, or in the city of Baltimore and a county, it shall be recorded in all the counties and the said city in which such land lies."

A comparison of the quoted provisions of article 23 with those of article 21 lead to the conclusion that the former is not in conflict with the latter, but is designed as an efficacious method of recording leases of railroads and franchises thereof, for the obvious reason that the situs of that type of property, as a general proposition,

is not confined to one territorial or political unit of the state, but may, and usually does, traverse a number of such units.

It is true, as urged by the appellee, that chapter 126 of the Acts of 1908, now codified as section 219 of article 23, did not in express terms repeal any of the provisions of the then existing general conveyancing laws of the state, enacted many years prior to the passage of the 1908 Act.

In effect, it was not a conveyancing statute, but, as its title indicates, it added a new section to article 23 of the Code of Public General Laws, entitled "Corporations," subtitle "Railroad Companies"; its purpose being to enable railroad companies, upon complying with its provisions, to form "a continuous route or routes for the transportation of persons and property." It is a well-settled principle of law that: "When there are two acts on the same subject the rule is to give effect to both if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first." *United States v. Tynen,* 11 Wall. 88, 92, 20 L. Ed. 153; *State v. Northern Central R. Co.,* 44 Md. 131; *Appeal Tax Court v. Western Maryland R. Co.,* 50 Md. 274, 296; *State v. Yewell,* 63 Md. 120; *Ulman v. State,* 137 Md. 642, 113 A. 124.

In the instant case, the two articles of the Code now being considered relate to entirely different subjects; namely, corporations and conveyancing.

In the case of *Buckler v. Safe Deposit & Trust Company,* 115 Md. 222, 80 A. 899, 902, it was contended that a lease for 999 years, made under the provisions of the Act of 1908, by the Northern Central Railroad Company, was redeemable under the provisions of section 95 of article 21 of the Code. And yet, notwithstanding that the Act of 1908 made no reference to, or in any way repealed, the redemptory provisions incident to leases covering periods of more than fifteen years, as contemplated by section 95 of article 21, in construing these apparent conflicting provisions of the Code, this court said:

"The subject-matter of the legislation provided for by section 89 [now 95] of article 21 of the Code is leases of land, and they are redeemable according to the terms prescribed by the act.

"The subject-matter of the legislation and the lease authorized by Act 1908, chapter 126, is not the lease of land, but of a railroad and its franchises and the system constituting the railroad in operation. This act manifestly intended that such leases should be permanent in duration, and not redeemable, except upon the terms and conditions, fixed by the lease itself."

The Northern Central Company lease, after demising the railroad and all property appurtenant thereto, contained an additional provision as follows: "And all the property, real and personal and all the assets of every kind and description of the lessor"; and it was further contended that by virtue of this latter provision of the lease any surplus lands of the company, or lands not actually used in the operation of its lines, or appurtenant thereto, would in any event be redeemable. In dealing with this latter contention this court said: "The answer to this contention we think is that there is nothing in the record to show that the lease includes property owned by the lessor, not used in connection with its railroad or the operation of its franchise."

The lease before us deals specifically with railroad property. It describes the several lines covered by the lease, as for example: "The railroad extending from the City of Philadelphia, State of Pennsylvania, to and into the City of Baltimore, State of Maryland, and from the latter City to and into the City of Washington, District of Columbia, the said railroad with the branches therefrom having a mileage of about two hundred and thirty (230) miles."

And the habendum clause, in part, is as follows: "Together with all the sidings, extensions and branches thereof or therefrom now existing or hereafter at any time during the continuance of this lease located and constructed or acquired as part of, or for use in connection with,

any of the several railroads hereinbefore mentioned, and all stations, depots, buildings, appurtenances and property of whatsoever kind and wheresoever situate now owned by or which may hereafter at any time during the continuance of this lease be constructed or acquired by the said lessor and which may be appurtenant to, and for use in connection with, any of the several railroads hereinbefore mentioned, and all the cars, locomotives and other equipment or rolling stock of said lessor, and also all its corporate rights, franchises and privileges, necessary to be enjoyed and exercised by the said lessee for the proper maintenance and use, operation and management of the railroads and property hereby demised. * * *"

Another provision of the lease, and one which was stressed by the appellee in the argument before this court, is thus stated: "Such real and personal property of the lessor as shall not, in the opinion of the lessee, be necessary for the then present or prospective use of the lessor's railroads, or for the protection of the interests of the said lessor therein, may with the consent of the lessor, * * * be sold from time to time by the lessee, and the lessor shall, upon the request of the lessee, execute and deliver proper conveyance and assurances of such property so sold as may be necessary to effectuate such sales."

Considering the above quoted sections of the lease together, it is apparent that it was, and is, designed to deal with railroad lines, franchises, and property appurtenant to the operation of such lines only. And that it embraces a saving clause to the effect that, if any part of the class of property appropriately adapted to, or used in, the management and operation of the railroads covered by the lease at the time of its execution shall subsequently become unnecessary in such operation, then, and in said event, the same may be disposed of and conveyed to the purchaser in accordance with the provisions of the general conveyancing laws of the state.

In our opinion, it would be an unreasonable inference to assume that the Legislature, in enacting chapter 126 of the Acts of 1908, intended that a lease of the character

now under our consideration should be recorded among the land records of each political or territorial unit of the state, through which the miles of railroad lines covered by the lease may traverse. It might be added that this conclusion is strengthened by the fact that the act specifically provides that, when such a lease is duly executed by the parties thereto, "a copy thereof, duly certified by the secretary of each of the companies parties thereto under their respective corporate seals, shall be filed in the office of the Secretary of State of the State of Maryland, and upon such filing the said agreement and the lease thereby effected shall become and be in full force and operation in accordance with its terms."

What we have said is directed to such leases only as are contemplated by the act. Or, in other words, if it be shown that a lease embraces property and franchises other than property and franchises appurtenant to the operation and management of a railroad line, a different conclusion may readily be reached.

The type of property covered by the lease, and whether it is such property as is appurtenant to the operation and management of the railroad, is a question of fact, and for that reason we are of the opinion that the trial court was in error in rejecting the proffer of a duly certified copy of the lease in evidence.

Having rejected the lease, the rulings of the trial court upon the prayers, as raised by the tenth exception, as well as the remaining rulings upon the evidence, consistent with the court's theory that it was a necessary prerequisite for the plaintiff to prove the recordation of the lease among the land records of Baltimore City, were consequently erroneous, and it therefore becomes unnecessary to further discuss them.

For the reasons stated, therefore, the judgment of the lower court will be reversed, and a new trial awarded.

*Judgment reversed, and new trial awarded,*
*with costs to the appellant.*