BELL, ET AL. v. STATE

[No. 91, September Term, 1961.]

*Decided October 22, 1964.*

*Petition for rehearing filed November 23, 1964, granted December 7, 1964, and judgments reversed April 9, 1965.*

The cause was argued on remand before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

*James M. Nabrit, III* and *Tucker R. Dearing* (on remand), with whom were *Juanita Jackson Mitchell, Jack Greenberg, Charles L. Black, Jr., Leroy D. Clark* and *Ronald R. Davenport* on the brief, for appellants.

*Robert C. Murphy, Deputy Attorney General,* (on remand), with whom were *Thomas B. Finan, Attorney General* and *William J. O'Donnell, State's Attorney for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the majority opinion of the Court. Oppenheimer, J., dissents. Dissenting opinion at page 369 *infra*.

The appellants were convicted in 1961 in the Criminal Court of Baltimore of violation of Code (1957), Art. 27, Sec. 577 (Trespass), which prohibits "wanton trespass upon the private land of others." They were civil rights demonstrators who sat in Hooper's restaurant in Baltimore, refusing to leave until the establishment departed from its fixed practice of not serving negroes. The judgments of conviction were affirmed by this Court in January 1962, *Bell v. State,* 227 Md. 302, and the appellants sought certiorari from the Supreme Court of the United States, which granted the writ, but not until June 10, 1963. *Bell v. Maryland,* 374 U. S. 805, 10 L. Ed. 2d 1030. Meanwhile, on March 29, 1963, the General Assembly of Maryland enacted a public accommodations law, applicable to Baltimore City and twelve of Maryland's twenty-three counties, which took effect on June 1, 1963. This law, which is to be found in Code (1964 Supp.), Art. 49B (Interracial Commis-

sion), Sec. 11, made it unlawful for the owner or operator of a place of public accommodation, as defined, to refuse or deny the accommodations, facilities or privileges of the place to any person because of his race, creed, color or national origin.[1] Thus the effect of the 1963 State statute was to make the trespass act inapplicable to places of public accommodation in Baltimore and the covered Counties.

On June 22, 1964, the Justices of the Supreme Court handed down their opinions in the case before us. See *Bell v. Maryland,* 378 U. S. 226, 12 L. Ed. 2d 822. Chief Justice Warren and Justices Clark, Brennan, Stewart, and Goldberg, in an opinion by Mr. Justice Brennan, explained their votes to remand the case to this Court for further consideration, in light of the changes in the statutory law of the State which had been made after the convictions of the appellants in the Criminal Court of Baltimore. Mr. Justice Black in dissent, joined by Justices Harlan and White, urged that the Fourteenth Amendment did not prohibit the owner of a restaurant from refusing service to

---

1. On March 14, 1964, the General Assembly re-enacted the provisions of the 1963 law and gave it State-wide application. The 1964 law provided that it was to go into effect on June 1, 1964, but petitions were filed calling for a referendum which, if valid, would suspend the operation of the law under Art. XVI of the Maryland Constitution. The validity of these petitions was attacked in proceedings now pending in the Circuit Court of Baltimore City. That court recently ordered the referendum to go on the 1964 general election in November.

Baltimore City enacted an ordinance like the State public accommodations law (Ordinance No. 1249) on June 8, 1962, shortly before the passage of the State law. That ordinance was declared invalid by the Superior Court of Baltimore City, on the ground that it was in conflict with the State Criminal Trespass statute, a public general law, and, hence, beyond the power of the City to enact. Karson's Inn, Inc. v. Mayor & City Council of Baltimore, Daily Record, February 4, 1963. This Court, on August 6, 1964, dismissed the appeal as moot, because the General Assembly of Maryland by Ch. 453 of the Laws of 1963, without otherwise changing the statute, had repealed and re-enacted the Criminal Trespass Act to provide that nothing therein contained should preclude the Mayor and City Council of Baltimore from enacting a public accommodations act, and that the City had enacted such an ordinance, Ordinance 103, approved February 26, 1964.

negroes. Mr. Justice Goldberg and Chief Justice Warren, although joining in the majority opinion, dissented from the dissent, in a separate opinion and Mr. Justice Douglas, with the support of Mr. Justice Goldberg, filed an opinion which gave the reasons for his vote to reach the merits and reverse outright the judgments of conviction.

In the opinion of the majority, Mr. Justice Brennan said the Court did not reach the constitutional issues presented for the reasons: (a) Maryland had, since the convictions, abolished the crime of which the appellants were convicted; (b) an appellate Court will apply the law in effect at the time of final judgment; (c) that the judgments in the present cases were not yet final because they were still on review in the Supreme Court (thus making a case where a change in the law has occurred "* * * pending an appeal on a writ of error from the judgment of an inferior court," as in *Keller v. State,* 12 Md. 322, 326); and (d) it would thus seem that the Maryland Court of Appeals would take account of supervening changes in the law and apply the principle that a statutory offense which has ceased to exist is no longer punishable at all, and reverse the convictions of the appellants.

Mr. Justice Brennan reached these conclusions upon an interpretation, as the eyes of a majority of the Supreme Court saw it, of (a) the common law of Maryland, and (b) the effect and operation of Maryland's general savings clause, Code (1957), Art. 1, Sec. 3, which reads as follows:

> "The repeal, or the repeal and re-enactment, or the revision, amendment or consolidation of any statute, or of any section or part of a section of any statute, civil or criminal, shall not have the effect to release, extinguish, alter, modify or change, in whole or in part, any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute, section or part thereof, unless the repealing, repealing and re-enacting, revising, amending or consolidating act shall expressly so provide; and such statute, section or part thereof, so repealed, repealed and re-enacted, revised, amended or consolidated,

shall be treated and held as still remaining in force for the purpose of sustaining any and all proper actions, suits, proceedings or prosecutions, civil or criminal, for the enforcement of such penalty, forfeiture or liability * * *."

As to the common law, Mr. Justice Brennan said (page references will be to 378 U. S.) :

"For Maryland follows the universal common-law rule that when the legislature repeals a criminal statute *or otherwise removes the State's condemnation from conduct that was formerly deemed criminal,* this action requires the dismissal of a pending criminal proceeding charging such conduct. The rule applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it." (p. 230) (emphasis supplied)

As to the Maryland savings clause statute, Mr. Justice Brennan said that upon examination of that statute and the relevant Maryland cases the Court was "far from persuaded" that this Court would hold the savings clause statute applicable to save the convictions. The opinion suggests that since the saving clause refers only to the "repeal," "repeal and re-enactment," "revision," "amendment" or "consolidation" of any statute or part thereof, it does not in terms apply to the present situation because "the effect wrought upon the criminal trespass statute by the supervening public accommodations laws would seem to be properly described by none of these terms." (p. 233) It was then said:

"The only two that could even arguably apply are 'repeal' and 'amendment.' But neither the city nor the state public accommodations enactment gives the slightest indication that the legislature considered itself to be 'repealing' or 'amending' the trespass law. Neither enactment refers in any way to the trespass law, as is characteristically done when a prior statute is being repealed or amended. This fact alone raises

> a substantial possibility that the saving clause would be held inapplicable, for the clause might be narrowly construed—especially since it is in derogation of the common law and since this is a criminal case—as requiring that a 'repeal' or 'amendment' be designated as such in the supervening statute itself." (pp. 233-4)

Further, Justice Brennan suggested that:

> "* * * even if the word 'repeal' or 'amendment' were deemed to make the saving clause prima facie applicable, that would not be the end of the matter. There would remain a substantial possibility that the public accommodations laws would be construed as falling within the clause's exception: 'unless the repealing * * * act shall expressly so provide.' " (p. 236)

The Court found support for this possibility in "public policy considerations" ("a legislature that passes a public accommodations law making it unlawful to deny service on account of race probably did not desire that persons should still be prosecuted and punished for the 'crime' of seeking service from a place of public accommodations which denies it on account of race.") (p. 235) and because while most criminal statutes speak in the future tense, and so apply only prospectively, the state enactment speaks in the present tense and provides that "it *is* unlawful for an owner or operator * * * (emphasis supplied) and this Court in *Beard v. State,* 74 Md. 130, found the use of the word "shall" an indication that the statute was prospective and not intended to apply to past cases.

The appellants adopt and urge the suggestions and reasoning of Mr. Justice Brennan's opinion for the majority of the Supreme Court and add the argument that the passage of the Federal Civil Rights Act of 1964 (Public Law 88-352, 78 Stat. 241) on July 2, 1964, after the remand by the Supreme Court, overrides State law and abates the convictions presently under review.

The State takes the position that since the acts of trespass here involved were conducted without violence or outrage, by students with a bona fide belief that their conduct was consti-

tutionally privileged, and the Legislature has made conduct like that of the appellants lawful and the resulting conduct, like that of the owner and operator of Hooper's restaurant, unlawful, "no real interest of the State would likely suffer were these convictions vitiated," but that the applicable and controlling State law inexorably requires affirmances, and that no federal law overrides this State law, so that no skirting or ingenious interpretation of the cases or the statute law can be availed to bring about reversal of the judgments of conviction.

There is much to be said for the position of the State that no harm to the general welfare of the State would be done and that a desirable public result would be achieved if the convictions were reversed, as the Supreme Court urges, but we, reading the Maryland law to have the ineluctable meaning that the State argues it has, feel constrained to avoid making bad law because the cases may be hard, and to apply the law as we find it to be.

It is clear that the common law of Maryland is that the repeal of a statute creating a criminal offense, after conviction under the statute but before final judgment, including the final judgment of the highest court empowered to review the conviction, requires reversal of the judgment, because the decision must accord with the law as it is at the time of final judgment, *Keller v. State, supra; State v. Clifton,* 177 Md. 572; and the general rule would seem to be the same, *United States v. Schooner Peggy,* 1 Cranch 103; 1 Sutherland, *Statutory Construction* (3rd Ed. 1943), Sec. 2043, p. 524. Maryland has applied the rule to situations where the Legislature has not repealed the prior law expressly or in terms but has passed a subsequent independent act, complete in itself, the terms of which necessarily were repugnant to or destroyed the earlier act, in whole or in part, and so had effected a repeal or amendment by implication, and has done so as to statutes creating crimes. *Davis v. State,* 7 Md. 151, 159 (constitutional provision that no law shall be revived, amended or repealed by reference to its title or section only does not apply to new independent act, establishing a new policy or reversing a previous policy of the State, for "the very fact of establishing a particular rule of conduct for the public, presupposes an intention on the part of the

legislature, that a contrary rule should not prevail, and therefore the enactment of one law, is as much a repeal of all inconsistent laws, as if those inconsistent laws had been repealed by express words.") ; *State v. Gambrill,* 115 Md. 506 (penal statute repealed by implication by a later independent act since the two were repugnant in their provisions and both could not stand and be executed at the same time). In *Gambrill* (at page 513) the sustaining of a demurrer to the indictment below was affirmed by this Court in 1911 because "* * * after the repeal of a law no penalty can be enforced nor punishment imposed for its violation, when in force, without a saving clause in the repealing statute * * *." The Legislature apparently took the hint for in 1912 it passed two general savings clauses (Ch. 120 and Ch. 365 of the Laws of 1912), which together now comprise the substance of Sec. 3 of Art. 1 of the Code. See also *McDonagh v. Matthews-Howard Co.,* 160 Md. 264.

We think it too plain for argument that the passage of the public accommodations law by the Maryland Legislature brought about a fundamental change in the State trespass act. It made lawful in a variety of given situations what before its passage would have been unlawful in those situations. In those situations specified by the public accommodations law, that law and the trespass act cannot stand together and both be executed, and to that extent, the two are repugnant and in irreconcilable conflict. On January 31, 1963, the Superior Court of Baltimore in *Karson's Inn, Inc. v. Mayor and City Council of Baltimore,* Daily Record, February 4, 1963, declared invalid, as in conflict with Code (1957), Art. 27, Sec. 577 (the Wanton Trespass section), Ordinance No. 1249 of the Mayor and City Council of Baltimore, approved June 8, 1962, which prohibited places of public accommodation, as defined, from denying services or facilities to any person because of his race. Soon thereafter the Maryland Legislature by Ch. 453 of the Laws of 1963 amended Sec. 577 of Art. 27 of the Code by adding a proviso that nothing therein should preclude Baltimore City from enacting public accommodations legislation similar to that declared invalid by the Superior Court. There can be no real doubt of the legislative recognition that there was repugnancy and irreconcilable conflict between the wanton trespass section of the Code and

the public accommodations laws, such as Ordinance 1249 and Ch. 227 of the Laws of 1963 (the State public accommodations law, Sec. 11 of Art. 49B of the Code) which it had passed *before* it amended Sec. 577 of Art. 27. (The public accommodations law was passed March 29 and the amendment to the wanton trespass section April 17.) Indeed, the Supreme Court in its remanding opinion shows its recognition of a fundamental change in the trespass act in its expressed expectation that this Court will reverse the convictions because the passage of the public accommodations statute made the former criminal conduct of the appellants a crime that no longer existed.

The suggestion in the opinion of Mr. Justice Brennan for a majority of the Supreme Court that the public accommodations law and ordinance did not repeal or amend the wanton trespass act because "* * * neither the city nor the state * * * enactment gives the slightest indication that the legislature considered itself to be 'repealing' or 'amending' the trespass law"; and neither "* * * enactment refers in any way to the trespass law, as is characteristically done when a prior statute is being repealed or amended" (p. 233) simply will not wash. The action of the Legislature in amending the trespass act to remove in terms the conflict between that controlling State law and a municipal public accommodations ordinance, after it had passed a state public accommodations law which in necessary effect and result made a fundamental change in the trespass law, gives rise to an almost inescapable inference that the Legislature knew it was repealing in part, or amending, the trespass law when it passed the State public accommodations act.

There are innumerable decisions in almost every state and in the federal courts holding that a subsequent independent statute, complete in itself, which alters or changes a prior act in such a way that the two are repugnant and cannot stand together, in whole or in part, effects a repeal or an amendment of the earlier act even though there is no reference whatever in the later act to the earlier. "An implied amendment is an act which purports to be independent of, but which in substance alters, modifies, or adds to a prior act." 1 Sutherland, *Statutory Construction* (3rd Ed. 1943), Sec. 1913, p. 365. "The definition of an implied amendment is purely formal—it is an amendment

that does not state that it is an amendment." Sutherland, *op. cit.*, Sec. 1920, p. 382, and also see Sutherland, *op. cit.*, Secs. 1901 and 1921.

In *Chase v. United States,* 256 U. S. 1, 9, 65 L. Ed. 801, the Court held that a federal act of 1912 impliedly repealed a similar act of 1882 on the same subject matter because it was plain that both acts could not be carried out, saying of the later act: "It supersedes, therefore, that act though it contains no repealing words." See also *United States v. La Franca,* 282 U. S. 568, 75 L. Ed. 551 (a section of an independent act, original in form, which in effect added a provision to an existing act was held amendatory thereof); *Baxter v. McGee,* 82 F. 2d 695 (8th Cir.); *United States v. Lapp,* 244 Fed. 377, 383 (6th Cir.); *Vance v. Safeway Stores,* 239 F. 2d 144, 145 (10th Cir.). In *Balian Ice Cream Co. v. Arden Farms Co.,* 94 F. Supp. 796, 798-9 (S. D. Cal.), Yankwich, J. said:

> "Whether an act is amendatory of existing law is determined not by title alone, or by declarations in the new act that *it purports to amend* existing law. On the contrary, it is determined by an·examination and comparison of its provisions with existing law. If its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law, or to reach situations which were not covered by the original statute, the act is amendatory, *even though in its wording* it does not purport to amend the language of the prior act. Whatever supplements existing legislation, in order to achieve more successfully the societal object sought to be obtained *may be said to amend it."*

See also *Robbins v. Omnibus R. Co.,* 32 Cal. 472; *State v. Gerhardt* (Ind.), 44 N. E. 469, and *State v. Chadbourne,* 74 Me. 506, 508, where the Court said:

> "And it is the effect, not the name given to an act that determines its character. If a subsequent statute does in fact modify and change the proceedings to be had under a former act, the later act is an amendment of the earlier act and must be so regarded and treated, although it is not so called in the act itself."

Many of the cases recognize that repeals and amendments by implication—equating the two—are not favored but will not be refused recognition in cases of manifest repugnancy or irreconcilable conflict. Some of these are *Watson v. Strohl* (Ind.), 46 N. E. 2d 204; *State v. LaRue's, Inc.* (Ind.), 154 N. E. 2d 708, 712; *Co-Ordinated Transport v. Barrett* (Ill.), 106 N. E. 2d 510, 515; *Jordan v. Metropolitan San. Dist. of Greater Chicago* (Ill.), 155 N. E. 2d 297, 303; *State v. Fowler* (Ore.), 295 P. 2d 167, 173; *Rickards v. State* (Del.), 77 A. 2d 199, 203; *Bedingfield v. Parkerson* (Ga.), 94 S. E. 2d 714, 718; see also 82 C. J. S. *Statutes* Secs. 252, 262, pp. 418, 432.

Maryland has been in accord with the authorities elsewhere (including the fact that the repealing or amending act need not in terms refer to the earlier act) although the cases in this State where there has been only a partial repugnancy have thought of and referred to the result as a repeal by implication pro tanto, rather than as an amendment by implication. See *Miggins v. Mallott,* 169 Md. 435; *Beall v. Southern Md. Agri. Asso.,* 136 Md. 305, 311-312, and cases cited; *Ulman v. State,* 137 Md. 642, 645, and cases cited; *State v. Gambrill, Davis v. State, McDonagh v. Matthews-Howard Co.,* all *supra; Green v. State,* 170 Md. 134, and *Pennsylvania R. Co. v. Green,* 171 Md. 63, 67-69.

Finding, as we do, that Ch. 453 of the Laws of 1963 (Code, 1964 Supplement, Art. 49B, Sec. 11), by necessary and compelling implication repealed pro tanto, or similarly amended, Code (1957), Art. 27, Sec. 577, it follows that the provisions of the general saving clause statute, Code (1957), Art. 1, Sec. 3, (that repeal or amendment of a statute shall not release, extinguish or change the criminal penalties imposed on the appellants unless the repealing statute "expressly so provide") applies. The part of the saving clause statute here pertinent was taken from a similar clause enacted by Congress in 1871, 1 U. S. C. Sec. 109. The federal saving clause was applied by the Supreme Court in *United States v. Reisinger,* 128 U. S. 398, 32 L. Ed. 480, and *Great Northern Ry. Co. v. United States,* 208 U. S. 452, 52 L. Ed. 567. See also *United States v. Carter,* 171 F. 2d 530 (5th Cir.). Its effect is discussed in *State v. Clifton,* 177 Md. 572, 576, where the Court said:

"While the repeal of a statute prevents any further proceedings thereunder at common law, it is well established that where there is a saving clause granting to the state or federal government the right to punish for offenses committed before the repeal, the general rule is rescinded. The saving clause may be contained in the repealing statute, or it may be a general provision which applies to all penal statutes. In either case, it has the effect of continuing the repealed statute in force for the purpose of punishing for the offenses committed prior to the repeal."

We see no basis for finding an express direction by the Legislature in the public accommodations law that existing criminal liabilities or penalties were to be extinguished. The Legislature must be presumed to have known that under Sec. 3 of Art. 1 of the Code an express direction, in so many words, was required to show legislative intent to effect such an extinguishment. The demonstrated preoccupation of the Legislature with the effect of the public accommodations law on the trespass act strengthens the view that it would have been completely explicit in its directions had it wished to change the general rule established by the saving clause.

The suggestion of Mr. Justice Brennan for the majority of the Supreme Court that the use of the present tense in the public accommodations law amounted to an express provision within the meaning of the general saving clause that existing criminal liabilities should be extinguished, under the reasoning of *Beard v. State, supra,* is, we think, much too tenuous and insubstantial to stand up. In the first place, *Beard* was decided years before the general saving clause became a part of Maryland law and the opinion recognizes that had the repealing statute contained an express saving of pending cases from its operation the prior penalty undoubtedly could have been imposed. In the second place the language of the public accommodations law that "it is unlawful" clearly means, we are convinced, that it is unlawful from and after the effective date of the act to do the proscribed things; that is, the passage of the act makes them unlawful. The Legislature knew that this Court, and other

courts of the State, had held that it was lawful for owners and operators of the places defined in the act to refuse to serve those they did not choose to serve and to invoke the trespass act against those who refused to leave their property. The 1963 trespass act in terms applied only to certain named places and did not apply to other named places, and for this reason, if for no other, it must be inferred that the Legislature was not declaring in the act the existing Maryland common law or existing constitutional right, but, rather, was creating new law, effective only from the date of its passage.

We have been referred to and found nothing to indicate a legislative intent that so much of the trespass act as was rendered nugatory by the accommodations law was not to survive to support past convictions for its violation.

Finally, we see nothing in the Federal Civil Rights Act of 1964 to indicate that it was to apply other than prospectively. It consistently uses the word "shall" which this Court found persuasive in *Beard v. State, supra,* to show prospective application. The general presumption is that all statutes, State and federal, are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary. Retroactively, even where permissible, is not favored and is not found, except upon the plainest mandate in the act. *Bruner v. United States,* 343 U. S. 112, 96 L. Ed. 786; *Claridge Apts. Co. v. Comm'r.,* 323 U. S. 141, 89 L. Ed. 139. There is no expression in the Federal Civil Rights Act to rebut the usual presumption. If it were possible to reasoningly discover from the terms of the act —we do not think it is—that the Congress intended the act to operate retrospectively, the owners and operators of covered establishments, who had discriminated before the passage of the act, would be subject to the sanctions of the act provided for such behavior and we are certain Congress intended no such result.

*Judgments affirmed, with costs.*

OPPENHEIMER, J., filed the following dissenting opinion.

The only difference between the majority of the Court and myself is on the issue of whether the convictions of the appel-

lants for acts which, under the Maryland public accommodations law would today be legal, are to be upheld because of the saving clause statute. I agree with my brethren that the passage of the 1963 public accommodations law brought about a fundamental change in the criminal trespass statute; that, in the situations specified in the public accommodations law, the two enactments are repugnant and are in irreconcilable conflict; and that the common law of Maryland is that our decision must accord with the law as it is at the time of final judgment. It is undisputed that, because of the remand of the cases to us by the Supreme Court of the United States, after our affirmance of the convictions in *Bell v. State,* 227 Md. 302, 176 A. 2d 771 (1962), and after the passage of the public accommodations law, the judgments of conviction have not become final. It is implicit in the opinion of the majority, and is clearly the law, that, apart from the operation of the saving clause statute, the convictions could not now stand. The majority holds, however, that, while the public accommodations law does not in terms amend or repeal the criminal trespass statute, the saving clause statute is nevertheless operative. With all due deference to the views of my brethren, I disagree.

The question is one of statutory construction, of phraseology and inferences, but as in other cases in which the Court must determine the meaning of legislative enactments, we must look to the nature and purpose of the statutes. *Darnall v. Connor,* 161 Md. 210, 155 Atl. 894 (1931) ; *Shub v. Simpson,* 196 Md. 177, 76 A. 2d 332 (1950). The public accommodations law deals with important rights of the individual. In essence, it not only negates the criminal nature of certain acts which formerly constituted trespasses but it restricts the very property rights which the criminal trespass statute was designed, in part at least, to protect. The effect of the public accommodations law includes the removal of a property right which formerly existed and the substitution of an affirmative personal right. This is a positive and basic change in the rule which governs the law. The saving clause statute has the effect of continuing a prior criminal statute in force for the purpose of punishing offenses committed prior to a change in law which makes the same acts legal in the future. *State v. Clifton,* 177 Md. 572, 576, 10 A. 2d 703 (1940).

While the saving clause statute does not of itself impose a criminal penalty, it continues in effect penalties which, but for it, would be abolished, and therefore, in my opinion, should be subject to the same strict construction which applies to laws which impose the penalties in the first instance. The rights and liberties of the individual against the State are directly involved in both cases. See *State v. Fleming,* 173 Md. 192, 195 Atl. 392 (1937); *Wanzer v. State,* 202 Md. 601, 611, 97 A. 2d 914 (1953).

The saving clause statute, by its terms, applies only to the "repeal, or the repeal and re-enactment, or the revision, amendment or consolidation of any statute, or of any section or part of a section of any statute." Code (1957) Article 1, Section 3. When there is such repeal or amendment, the act has the effect of continuing the repealed or amended statute in force for the purposes of punishing the offenses committed prior to the amendment or repeal. Where it is applicable, it affects a change in the common law.

The common law principle which the saving clause statute affects, when it is applicable, was stated by Chief Justice Marshall in these words:

> "It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional * * * I know of no court which can contest its obligation * * * In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside." *United States v. Schooner Peggy,* 1 Cranch 103, 110 (1801).

This language was cited with approval in *Keller v. State,* 12 Md. 322, 71 Am. Dec. (1858). In most of the decisions applying the principle, the subsequent legislation repealed or amended

the prior act under which there was a conviction. The rule applies also, however, where there is no repeal or amendment but where the effect of the prior law is abrogated or destroyed. 1 *Sutherland, Statutory Construction,* § 2043 (3d ed. 1943); *Berger v. Berger,* 104 Wis. 282, 80 S. W. 585 (1899).

The majority opinion holds, in effect, that whenever the principle enunciated by Marshall and followed by us in *Keller* and subsequent cases comes into effect, it does so because the prior rule or statute has been repealed or amended, and that when, as in this case, the subsequent act contains no language of repeal or amendment, the repeal or amendment is to be implied, and therefore, the saving clause statute becomes operative. This reasoning, to me, disregards the distinction between invalidity of prior convictions because of subsequent legislative repeal or amendment and invalidity because of a fundamental change in the law—here, of basic individual and property rights—which, of itself, makes the prior convictions repugnant to present policy.

Many cases, applying the common-law rule, use language of implied repeal or amendment as a means of setting aside prior convictions in the light of subsequent enactments; they do not reach the other prong of the rule. None of the cases cited in the majority opinion on this point deals with the construction of a saving clause statute such as is here involved; they only go to the survival or setting aside of the prior conviction because of the subsequent change in law.

The effect of the majority opinion on the point is to construe the saving clause statute to extend to any legislative change which makes prior illegal acts legal. The statute does not so read, and, in my opinion, should not be so construed.

Nor, in my opinion, did the Legislature in enacting the 1963 public accommodations law intend to save convictions under the criminal trespass statute by way of impliedly repealing in part or amending that act so that the saving clause statute would become operative. The enactment of the public accommodations law followed the passage of a Baltimore City ordinance to the same effect. The ordinance had been introduced after the appellants had been convicted and while their appeals from the convictions were pending in this Court. The ordinance was passed on

the same day that the petition for certiorari from our decision affirming the convictions was filed in the United States Supreme Court. Further, the ordinance contained no saving clause, and it is generally held that state saving statutes do not apply to ordinances. *Pleasant Grove City v. Lindsay,* 41 Utah 154, 125 P. 389 (1912) ; *Barton v. Incorporation of Gadsden,* 79 Ala. 495 (1885) ; *In Re Yeoman,* 227 N. Y. S. 711, 131 Misc. 669 (1928). On these facts, there is a strong inference that it was the intent of the Mayor and City Council that the ordinance should apply to the convictions of the appellants as well as to future similar actions. The General Assembly passed the public accommodations law when the validity of the City ordinance was under attack in substantially the same language as that of the City ordinance.

As the majority opinion points out, a few weeks after it had passed the 1963 public accommodations law, the Legislature repealed and re-enacted the criminal trespass statute. This re-enactment was in the same terms as those of the earlier act, except for the addition of a proviso enabling the Mayor and City Council of Baltimore to enact legislation such as its former ordinance. This re-enactment of the criminal trespass statute did not refer in any way to the public accommodations law. If, as the majority holds, the latter law repealed in part or amended the criminal trespass statute, it is reasonable to assume that, in re-enacting the trespass statute after it had passed the public accommodations law, the Legislature would have spelled out the changes which, in the opinion of the majority, it had intended to make. A more probable explanation of the legislative intent, it seems to me, is that the Legislature recognized by its acts that the public accommodations law did not repeal or amend the criminal trespass law but rather fundamentally changed public policy as to certain basic rights. It was that direct fundamental change, rather than implied legislative action, which vitiated the appellants' convictions.

In no prior case have we held that the saving clause statute operates to continue a former law in effect for the purpose of punishing an offense committed prior to the subsequent legislation where the later act did not either in terms eliminate the criminality of the defendant's action or change the penal-

ties. Cf. *State v. Clifton, supra; State v. Kennerly,* 204 Md. 412, 104 A. 2d 632 (1954). The public accommodations law did neither. What the Legislature did in repealing and re-enacting the criminal trespass statute a few weeks after it had passed the public accommodations law, without altering the terminology of the trespass statute, was in effect to recognize the change in the meaning of what constitutes "wanton trespass" effected by the public accommodations law. This later action, in my opinion, strengthens the inference that, when the Legislature created new rights in the public accommodations law, it did not intend the saving clause statute, which is only applicable in cases of amendment or repeal, to apply.

In two cases decided by this Court when the saving clause statute was in effect, a subsequent law was in basic conflict with prior legislation. In both cases, the Court held that an action upon the prior act could not lie. *State v. American Bonding Co.,* 128 Md. 268, 97 Atl. 529 (1916); *Green v. State,* 170 Md. 134, 183 Atl. 526 (1936). In neither case was there a reference to the saving clause statute. In *State v. Clifton, supra,* this Court said that the reason the saving clause statute was not applied in those cases was because "in neither of those proceedings did it appear that any penalty, forfeiture or liability had actually been incurred." 177 Md. at 576. The terms of the saving clause statute make it applicable only when a penalty, forfeiture or liability has been incurred. Other terms of the statute make it applicable only when the subsequent law amends or repeals the prior enactment. Under what seems to me to be a proper construction of the saving clause statute, which is penal in nature, there was no such repeal or amendment intended in the public accommodations law.

The judgments of convictions should be reversed.